UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                )
BOYD FULTON,                    )
     Plaintiff,                 )
                                )
          v.                    )        04-CV-11234-MEL
                                )
TOWN OF HULL, MASSACHUSETTS,    )
     Defendant.                 )
                                )
```

MEMORANDUM AND ORDER

LASKER, D. J.

Boyd Fulton ("Fulton") sues his former employer, the Town of Hull, Massachusetts ("Hull"), seeking to recover unpaid vacation and overtime compensation pursuant to the Massachusetts Weekly Wage Law, M.G.L. c. 149 § 148, and the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq*. Fulton moves for partial summary judgment on Count IV of his complaint, alleging unpaid vacation time (the "vacation pay claim") and Count III, alleging unpaid on-call time (the "on-call pay claim"). Count IV is a claim under the Weekly Wage Law and Count III is a claim under the FLSA. For the following reasons, Fulton's motion is GRANTED in part and DENIED in part.

I. Background

From November 13, 2001 until June 6, 2002, Fulton was employed as a Special Motor Equipment Operator in Hull's Highway Department. Throughout his employment, Fulton's position was

1

governed by a collective bargaining agreement (CBA).  Among other provisions, the CBA provided that Fulton's 40-hour work week was Monday through Thursday, 8 3/4 hours per day, and 5 hours on Friday mornings.  Fulton earned an hourly wage of $15.60. Further, the CBA provided that Fulton would accrue one week of paid vacation upon the completion of his first six months of employment.  Accordingly, by May 13, 2002, Fulton had earned one week of paid vacation.  Just one month later, on June 6, 2002, Fulton was discharged by the Town of Hull.  To date, Hull has not paid Fulton for his one week of accrued vacation.

## II. The Vacation Pay Claim

The Massachusetts Weekly Wage Law, M.G.L. c. 149 § 148, requires employers to pay employees all wages earned within 6 days of the end of the pay period during which the wages were earned.  "[A]n employee whose employment is terminated involuntarily must be paid in full on the day of discharge." Prozinski v. Northeast Real Estate Servs., LLC, 797 N.E.2d 415, 419 (Mass. App. Ct. 2003).  If an employer chooses to provide paid vacation to its employees, it must treat those payments like any other wages.  See Massachusetts v. Morash, 490 U.S. 107, 109 (1989).

Fulton asserts (and Hull does not dispute) that upon completion of his first six months of work on May 13, 2002, he accrued one week of paid vacation.  Fulton was earning $15.60 per

hour at the time of his termination and a week of paid vacation amounted to $624.00.  Fulton argues that he is entitled to have those damages trebled to $1,872.00, and to receive reasonable attorney's fees and costs.  See Wiedmann v. Bradford Group, Inc., 831 N.E.2d 304, 313 (Mass. 2005).

Hull does not dispute that Fulton accrued one week of paid vacation at the time of his termination, nor does Hull deny that Fulton has yet to be paid these wages.  However, while initially conceding in its Answer that Fulton was entitled to treble damages, Hull now contends that Fulton is not automatically entitled to treble damages in light of the Supreme Judicial Court's decision in Wiedmann v. Bradford Group, Inc., which makes such damages discretionary.  831 N.E.2d at 313.

* * *

Under the Weekly Wage Law, vacation payments are treated like any other wages.  Morash, 490 U.S. at 109.  A discharged employee must be paid in full (that is, including accrued vacation benefits) on the day of his discharge. Prozinski, 797 N.E.2d at 419.  Thus, upon Fulton's termination, he was entitled to be paid for his one week of accrued vacation, $624.00.  See Morash, 490 U.S. at 109.

Accordingly, Fulton's motion for partial summary judgment on his vacation pay claim is GRANTED.  Moreover, given that more than four years have passed since Fulton's termination,

Fulton is entitled to have his vacation pay damages trebled for a total of $1,872.00.  See Wiedmann, 831 N.E.2d at 313.  Reasonable costs and attorney's fees, proportional with the amount of judgment, are GRANTED.  See id. at 312 n.13.

### III. The "On-Call" Pay Claim

Under the Fair Labor Standards Act, an employer must compensate employees covered by the Act at one and one-half times their regular rate for overtime work.  29 U.S.C. § 207(a).  In certain circumstances, time spent on-call may qualify as compensable overtime work.  Such on-call time can be compensable depending on the extent to which it is spent for the benefit of the employer.  See Armour & Co. v. Wantock, 323 U.S. 126, 133 (1944); Skidmore v. Swift & Co., 323 U.S. 134, 136-37 (1944).

Fulton asserts that in addition to his regular 40-hour work week, he was required to be "on-call" whenever it snowed. Fulton contends that there were six such days when he was required to be on-call for work, two of which he actually worked and was appropriately compensated.  On the remaining four days, Fulton argues that the use of his time was so restricted that it was spent primarily for Hull's benefit.

In support, Fulton refers to a letter dated January 23, 2002 from Hull's Superintendent of Streets informing Fulton of his obligation to report to work within one-half hour of being called on days when it snowed, and that his failure to report

4

would expose him to possible discipline.  Fulton asserts that
this letter establishes that he was on-call on the four days at
issue, and that this on-call time is compensable because it was
so restricted.

Fulton's regular hourly wage was $15.60, and because
Fulton was on-call 7.5 hours each of the four days at issue,
Fulton argues that he is entitled to $702.00 (7.5 hrs x $23.40
per hour x 4 days), which is then doubled pursuant to 29 U.S.C. §
216(b), for a total of $1,404.00.

Hull argues that there remains a factual dispute as to
whether Fulton was actually on-call.  See Skidmore, 323 U.S. at
137.  Hull submits that the expectation that an employee must
return to work within 30 minutes of being called was subject to
the qualification that the employee was actually able to return.

Moreover, Hull argues that the January 23, 2002 letter
Fulton received from the Town was actually a "reprimand" for not
answering his telephone when the Highway Department tried to
reach him, and not an authoritative announcement of an on-call
policy.

* * *

Here, summary judgment is not appropriate because there
remains a factual dispute as to whether Fulton was actually on-
call the four days he alleges.  Fulton asserts that his on-call
time is compensable because his activities were restricted and

his failure to abide by these restrictions exposed him to possible discipline.  In response, Hull has denied that Fulton's time was so restricted, and has submitted an affidavit from the foreman in charge of the Highway Department that contradicts Fulton's assertions.

Accordingly, because Fulton's factual contention that he was on-call is disputed, summary judgment on Fulton's on-call pay claim is DENIED.

It is so ordered.


Dated:    August 22, 2006
          Boston, Massachusetts      /s/ Morris E. Lasker
                                          U.S.D.J.