UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

BOYD FULTON,
    Plaintiff

v.

TOWN OF HULL, MASSACHUSETTS,
    Defendant

Civil Action No.2004 CV 11234 MEL

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN ASSESSMENT OF A PARTIAL AWARD OF ATTORNEYS' FEES

In its Order of August 22, 2006 the Court awarded the Plaintiff partial summary judgment and a partial award of attorney's fees, and presumably costs. In support of his Motion for an Assessment of a Partial Award of Attorney's Fees, the Plaintiff has submitted the Affidavit of Mark D. Stern. Therein he discusses the facts associated with the primary factors for the Court to consider in assessing such an award. Since the award is made under Massachusetts law, the appropriate standards to be employed in determining an appropriate fee award are set forth in *Fontaine v. Ebtec Corp.*, 415 Mass. 309 (1993). They are ones with which the Court is undoubtedly familiar.[1] They mandate that the fee awarded to her Counsel should be "comparable to what 'is traditional with attorneys compensated by a fee-paying client.'" *Missouri v. Jenkins*, 491 US 274, 286 (1989) quoting *Hensley v. Eckerhart*, 461 U.S. 426, 435 (1982).

---

[1] The factors to be considered are the difficulty of the legal and factual issues involved; the degree of competence demonstrated by the attorney; the nature of the case and the issues presented; the time and labor required; the stakes involved; the result obtained; the experience, reputation and ability of the attorneys; the usual price charged for similar services by other attorneys in the same area; and the amount of awards in similar cases. *Id.* @ 324-25. One factor, "How long the trial lasted," has been excluded from the listing in *Fontaine* as the instant application relates solely to appellate services.

> Unless there is a certainty of receiving a reasonable fee, those resources become non-existent. In order to ensure the delivery of the requisite competent and equal . . . legal resources, fees should be awarded "as is traditional with attorneys compensated by a fee paying client." . . . [A]ttorneys should know with certainly that their good faith efforts will be rewarded fairly." . . . Vigorous advocacy is the heart of the adversary system of justice." *Wheeler v. Durham City Board of Ed.*, 88 F.R.D. 27, 33 (M.D.N.C. 1980)

Civil Rights Litigation Handbook, Volume I, "Overview of Fee Awards," @ 232-233; see also, *Pine v. Rust*, 404 Mass. 17, 19 (1989).

## I. THE BASIC MEASURE OF A FEE AWARD

Such a fee is determined by focusing on the three factors generally regarded to be the component elements of a "basic measure" of a fee to award: (1) the amount of services rendered; (2) the necessity of those services; and (3) the appropriate market rates for those services. *Fontaine* at 325-326. These factors are discussed below and in the affidavits provided.

Once a party has have established an entitlement to the fees requested on each of these elements, absent special circumstances, a court's discretion to deny or reduce a fee award is very restricted. *New York Gaslight Co. v. Carey*, 447 U.S. 54, 67-68 (1980); *Hensley, supra*, 430, n.4 (1983) (in computing a fee, counsel should be paid for **all** time reasonably expended on a matter; any reduction of fees would have to be carefully justified by applying an objective formula); *Blum v. Stenson*, 465 U.S. 886, 897-899 (1984) (the court's discretion to adjust the basic measure based on other factors is very restricted).

### B. TIME EXPENDED

The Plaintiff has presented a number of claims to this Court in his Complaint. He sought partial summary judgment on two of them, and was granted such relief on one of those two claims. The remaining claims are pending. The time involved in prevailing on that claim as

distinct from other claims and at times other matters is not always directly distinguishable. For example, the Plaintiff first met on a number of occasions with his Counsel, and they did investigation of his claims in this and another proceeding. There is no way his Counsel can honestly say how many minutes of those meetings relate to the claim on which he prevailed and how many minutes relate to other matters. His Counsel drafted a Complaint, and in doing so did not separately identify how much time was spent writing in relation to each separate claim. Notwithstanding those facts, the Plaintiff is entitled to some compensation for the services of his Counsel in such regards, as he could not have prevailed on the claim he did without having met with his Counsel and without his Counsel's having drafted a Complaint. Hence, the Plaintiff, as described in his Counsel's Affidavit, apportioned the time expended on such mixed tasks according to the likely proportion that related to the "vacation pay" claim.

In summary, Plaintiff's Counsel has requested full compensation for the services identified as being exclusively related to said claim, half compensation for the services identified as being exclusively related to two of his claims (the "vacation pay claim" and one other included in his Motion for Partial Summary Judgment), and one third compensation for services related to his claims in this proceeding generally. Where services are specifically identified as being related to a claim on which he did not prevail, or a different proceeding, he has not asked for any compensation. Finally, where services are generally related to representing the Plaintiff, but not exclusively in regard to this proceeding, he has requested twenty-two percent compensation. In this regard, the Plaintiff believes he has equitably treated the Defendant, and as best as he can

complied with the spirit and letter of the mandate of the Court.[2]

The details of the services rendered are set forth in Exhibits to the Affidavit of Mark D. Stern. His time records were created contemporaneously with the performance of the services rendered, and carefully reviewed for accuracy.

### B. NECESSITY FOR SERVICES

The services rendered were necessitated because the Defendant failed to pay the Plaintiff wages it acknowledged were due and owing to him.. As noted by the Court in *City of Riverside v. Rivera*, 477 U.S. 561, 580, n. 11 (1986), quoting *Copeland v. Marshall*, 641 F.2d 880, 904 (D.C.Cir. 1980) (*en banc*) (A party "cannot 'litigate tenaciously and then be heard to complain about the time necessarily spent by the Plaintiff in response.'" see also *Hedges v. Wauconda Community Unit School District No. 118*, 1993 WL 313527 (N.D. Ill. 1993).

### C. APPROPRIATE MARKET RATES

The Plaintiff has presented the Court with a number of Affidavits indicating the appropriate market rates for his Counsel's services. While all of the Affidavits presented to some degree address this question, that is, describe the experience, reputation and skill of one or both of the Tenant's Counsel, several specifically address the question of current rates appropriate for Counsel's services, those of Thomas Shapiro, Barry Klickstein, Andrew Fischer and Joanne Fray

These and other affiants describe their familiarity with the work of Plaintiff's lead Counsel. He is recognized for his extensive experience, excellent reputation and expert abilities.[3]

---

[2] If he prevails on other claims at a later date, he may request compensation for some further portion of these services.

[3] Affiants supporting the application in this case or in previous cases describe Mr. Stern or his credentials as "one of the most intelligent, resourceful, hardworking and tenacious attorneys I have ever

They are described as "well known for their skill and knowledge in the area of housing cases and they both possess excellent reputations in the legal community." Affidavit of Nadine Cohen.

The supporting affiants attest that Mr. Stern could very well have asked for a far higher rate given that $450 per hour would have been well within the lower part of the range of fees charged for similar work by Boston law firms for the services of practitioners of similar experience (Affidavits of T. Shapiro, B. Klickstein, J. Fray and A. Fischer).

## II.   ADJUSTMENTS TO THE BASIC MEASURE

When considering whether to adjust the "basic measure" upwards or downwards, courts have considered, inter alia, the novelty and difficulty of the case, whether the fee is fixed or contingent, and the results obtained by the litigation. They do not, however, rely on these factors to erode or inflate a fee award dramatically from what is determined to be the "basic measure." Courts also consider other factors, discussed below, but are clear that "the basic measure . . . should govern unless there are special reasons to depart from them." *Fontaine*, 415 Mass. at 325, quoting from *Stratos, supra*; see also *Draper v. Town Clerk of Greenfield*, 284 Mass. 444, 455 (1981), cert. den. sub nom.

Among these factors desirability of the work is the only one deserving particular attention. This case is, as the Court recognized, not one a private practitioner would generally

---

encountered" (Affidavit of B. Hiller), "one of the most effective attorneys,... organized, diligent, articulate and persuasive,... a formidable adversary and zealous advocate" (Affidavit of J. Mason), "an outstanding litigator, knowledgeable, smart, skillful, and hard working" (Affidavit of J. Somberg), "[Attorney Stern is] well known for their skill and knowledge in the area of housing cases and they both possess excellent reputations in the legal community" (Affidavit of N. Cohen), "a first rate attorney with an excellent reputation (Affidavits of T. Shapiro and B. Klickstein), "an experienced and able trial and appellate lawyer" (Affidavit of A. Fischer). In one set of words or another, all of these experienced attorneys/judges state that compensation for his services should be commensurate with attorneys with thirty years experience in Boston law firms.

find to be desirable. It does not involve the large sums about which lead Counsel is ordinarily accustomed to litigate. <u>See</u> description of cases in Affidavit of Mark D. Stern. It will not likely lead to his procurement in the future of any more lucrative work, or his having a lucrative relationship with this particular client. Affidavit of Mark D. Stern. Though he initially received some payments from the client, largely for the Civil Service case, the fee for the services rendered in this proceeding is largely contingent in nature.

By his attorney,

Mark D. Stern
BBO #479500
**Mark D. Stern, P.C.**
34 Liberty Avenue
Somerville, MA 02144
Tel. (617) 776-4020
Fax (617) 776-9250
email: markdsternpc@rcn.com

CERTIFICATE OF SERVICE

I hereby certify that on this date September 6, 2006 I caused to be served a copy of the above document on the Defendant by mailing a copy, first class, postage prepaid to its attorney James B. Lampke, 115 North Street, Hingham, MA 02043

Signed:
Mark D. Stern