UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

BOYD FULTON,
    Plaintiff

v.

TOWN OF HULL, MASSACHUSETTS,
    Defendant

Civil Action No.2004 CV 11234
MEL

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S CONSOLIDATED MOTION FOR AN ASSESSMENT OF COSTS INCLUDING REASONABLE ATTORNEY'S FEES AND INTEREST THEREON

In its Order of August 22, 2006 the Court awarded the Plaintiff damages and costs including reasonable attorney's fees after allowing, in part, his motion for partial summary judgment. In support of his Motion for an Assessment of a Partial Award of Attorney's Fees in September 2006, the Plaintiff submitted the Affidavit of Mark D. Stern and other materials. Therein he discussed the primary factual matters for the Court to consider in assessing such an award. The Court deferred action on said application.

Upon entering into an Agreement for Judgment approved by the Court, the merits of the instant case were concluded. Plaintiff now submits a "Consolidated Motion" and "Affidavit of Mark D. Stern in Support of Consolidated Motion" as to services rendered for which a fee was previously sought and for additional services rendered on the remainder of the case. Additionally he submits the Affidavit of Harvey Shapiro and a Memorandum of

1

Law as to the factors to be considered in determining his motion.

## I.    PLAINTIFF'S PREVAILING PARTY STATUS

A reasonable award of attorney fees for prevailing state non-payment of wages and/or FLSA claimants is **mandated** respectively by both G.L. c. 149, §150 and 29 U.S.C. §216(b). Unlike other fee-shifting standards, awards under these statutes are not discretionary with the Court. *Chiappetta v. Lyons*, 1999 Mass. App. Div. 276, 280 (1999); *Montgomery Ward & Co. v. Antis*, 158 F.2d 948, 952 (6th Cir.), cert denied, 331 U.S. 811 (1947).

In this case, there is no question Plaintiff is a prevailing party. As concerns his claim for unpaid vacation time, he obtained summary judgment for the entirety of the relief he sought. As concerns his other claims the Court entered Judgment in his favor pursuant to an agreement of the parties. While Judgment was for less than all he sought to recover, it was not for an insubstantial amount when considered in light of the relief he sought.

## II.    THE STANDARDS TO BE APPLIED TO DETERMINE
## THE BASIC MEASURE OF A REASONABLE FEE

Under Massachusetts case law, the "basic measure" for an attorney's fee award is "time reasonably spent preparing and litigating a case" multiplied by the "fair market rate" for those services. *Fontaine v. Ebtec Corp.*, 415 Mass. 309, 326 (1993). In federal opinions, a similar valuation, called the "lodestar" value, is determined by three factors: (1) the amount of services rendered; (2) the necessity for rendering those services; and (3) the appropriate market rate for those services. *Martino v. Mass. Bay Transp. Auth.*, 230 F. Supp. 2d 195, 201 (D. Mass. 2002), quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The time

expended includes all time reasonably spent pursuing an award of fees.[1]

Both the state and federal rules mandate that the fee awarded to counsel should be "comparable to what 'is traditional with attorneys compensated by a fee-paying client.'"[2] for several policy reasons –

> In order to ensure the delivery of the requisite competent and equal . . . legal resources, fees should be awarded "as is traditional with attorneys compensated by a fee paying client." . . . [A]ttorneys should know with certainly that their good faith efforts will be rewarded fairly." . . . Vigorous advocacy is the heart of the adversary system of justice." *Wheeler v. Durham City Board of Ed.*, 88 F.R.D. 27, 33 (M.D.N.C. 1980).

– and –

> Unless there is a certainty of receiving a reasonable fee, those resources become non-existent.

<u>Civil Rights Litigation Handbook</u>, Volume I, "Overview of Fee Awards," @ 232-233;

<u>see</u> <u>also</u>, *Pine v. Rust*, 404 Mass. 17, 19 (1989).

The standards mandate that a fee, often a substantial fee, be fundamentally determined and awarded in this fashion for sound policy reasons. These and similar types of proceedings are intended to vindicate important rights. Because however, they often seek only a small amount of damages for those who could not obtain payment of wages they earned without the assistance of counsel, they cannot be vindicated except when counsel is

---

[1] <u>See</u> *Dugan v. Board of Selectmen of Dartmouth*, 413 Mass. 641, 644 (1992) ("It is well established that attorney's fees incurred in obtaining or sustaining [an award of attorney's fees] . . . should themselves be awarded"); *Martin v. University of Ala.*, 911 F.2d 604, 610 (11th Cir. 1990) (holding it to be error even to award lower hourly rate for fee petition litigation than for contesting merits.).

[2] *Missouri v. Jenkins*, 491 US 274, 286 (1989) quoting *Hensley*, 461 U.S. @ 435.

not constrained in his efforts by the relatively small sums to which the client is entitled.

*Brooklyn Sav. Bank v. O'Neill,* 324 U.S. 697, 707 n. 18 (1945), cited by this Court in

*Mogilevsky v. Bally Total Fitness Corp.*, 311 F. Supp. 2d 212, 216 (D. Mass. 2004).

## III.    ADJUSTMENTS TO THE BASIC MEASURE

Once a party has established an entitlement to the fees requested on each of these two

or three basic elements, absent special circumstances, a court's discretion to reduce a fee

award is very restricted. *New York Gaslight Co. v. Carey*, 447 U.S. 54, 67-68 (1980);

*Hensley,* 461 U.S. @ 430, n.4 (in computing a fee, counsel should be paid for all time

reasonably expended on a matter; any reduction of fees would have to be carefully justified

by applying an objective formula);  *Blum v. Stenson*, 465 U.S. 886, 897-899 (1984) (the

court's discretion to adjust the basic measure based on other factors is very restricted).

In its exercise of discretion to increase or decrease a basic fee the court may consider

a number of factors.  The classic statement of these factors was set forth in    *Johnson v.*

*Georgia Highway Express*, 488 F.2d 714, 717 - 19 (5th Cir. 1974).  The *Johnson* list includes

both the factors considered in determining the lodestar value and the factors to be considered

in adjusting the value.[3]  These twelve factors are listed below, those being subsumed in the

---

[3] One state court described the factors more succinctly: the difficulty of the legal and factual issues involved; the degree of competence demonstrated by the attorney; the nature of the case and the issues presented; the time and labor required; the stakes involved; the result obtained; the experience, reputation and ability of the attorneys; the usual price charged for similar services by other attorneys in the same area; and the amount of awards in similar cases. *Fontaine* @ 324-25. One factor, "How long the trial lasted," has been excluded from the listing in *Fontaine* as the instant application relates solely to results obtained by summary judgment and an agreement for judgment.

lodestar being underlined:

1)      <u>the time and labor required</u> - the Court will reduce for hours found unnecessary, duplicative, or both. <u>See</u> *Gary v. Health Care Servs.*, 744 F. Supp. 277, 279 (11th Cir. 1991);

2)      the novelty and difficulty of the questions involved;

3)      <u>the skill requisite to perform the legal service properly</u>;

4)      the preclusion of other employment due to acceptance of the case;

5)      <u>the customary fee - generally computed with a "community standard" at the time of the litigation</u>, <u>See</u> *Gary*, 744 F. Supp. @ 279;

6)      whether the fee is fixed or contingent;

7)      the time limitations imposed by the client or the circumstances;

8)      the amount involved and the results obtained,    <u>See</u> *Hensley*, 461 U.S. @ 437 (suggesting two possible approaches for reducing award for unsuccessful claims: (1) "attempt to identify specific hours [i.e. hours claimed in relation to "unsuccessful" claims] which should be eliminated;" or (2) "simply reduce the award to account for the limited success");

9)      <u>the experience, reputation, and ability of the attorneys</u>;

10)     the "undesirability" of the case;

11)     the nature and length of the professional relationship with the client; and

12)     awards in similar cases**.**

In relation to the establishment of the basic measure of an attorney fee award in regards to the specific case, this Memorandum will address the following matters:

A.      the time and labor reasonably required to resolve Plaintiff's case (#1 above);

B.      the customary fee in the market for similar legal services; (#3, #5 &

#9 above); and

C.     the extent of Plaintiff's success (#8 above).

Thereafter the Plaintiff will discuss only those remaining factors applicable to the issue before the court (#2, #6, #10, #11, and #12 above), and not the remaining factors (#4 and #7 above) not applicable to this particular case.[4]

## IV.     TIME AND LABOR REASONABLY REQUIRED

The time and labor reasonably required in a case is determined by a straight-forward formula.  The Court first "determine[s] the number of hours actually spent and then subtract[s] from that figure hours which were duplicative, unproductive, excessive, or otherwise unnecessary." *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 950 (1st Cir. 1984), quoting *Hensley*, 461 U.S. @ 424, 432-35.

### A.     REASONABLE HOURS EXPENDED

The number of hours actually spent pursuing and litigating the case are detailed in the contemporaneous time records of Plaintiff's Counsel Mark D. Stern, reproduced as Addendum A to the Affidavit of Mark D. Stern in Support of Fulton's Consolidated Motion For An Award of Attorney's Fees.  Stern's records are, as they should be, both detailed and contemporaneously maintained.  See *Grendel's Den,* 749 F.2d @ 952.   The records

---

[4] The Plaintiff regards two factors not applicable to the issue before the Court: the preclusion of other employment by the attorney due to acceptance of the case and time limitations imposed by the client or the circumstances. However, the Plaintiff reserves the right to address these factors in a reply Memorandum if any or all of them are raised by the Defendant's response to the fee application.

themselves do not bind the Court which may instead "draw[] on [its] own experience and wisdom [in] deciding whether the time spent on each phase was in excess of a reasonable amount." *United States v. Metropolitan Dist. Comm'n*, 847 F.2d 12, 18 (1st Cir. 1988); *Mogilevsky*, 311 F. Supp. @ 218.

In determining whether the hours Plaintiff's Counsel expended were necessary and reasonable, Plaintiff asks the Court to consider the following analyses concerning the necessity for the services his Lead Counsel, his associate and his assistants provided.

## 1. THE SERVICES RENDERED WERE AS A WHOLE NECESSARY TO EFFECTUATE THE PURPOSES OF THE APPLICABLE STATUTES

Whether services are necessary is determined by two factors: does a party have a meritorious claim and, if so, what means were actually required to obtained the relief to which the party was entitled therein? In this case, the answer to the first question is; when his employment was terminated in June 2002, Mr. Fulton was entitled to $624 in vacation pay; he may also have been entitled to additional sums for two days of work, on call time, and for working Friday afternoons. The parties, by agreement, have placed a $1,000 dollar value on these three disputed claims, though, by doing so, have not admitted liability on that account.

Mr. Fulton was not paid any of these sums and the record does not indicate what if anything he or the Town did about that matter before he filed suit pro se in this Court in June 2004. Thereafter the record is detailed as to what occurred. Fulton obtained present Counsel to represent him, present Counsel cleaned up Fulton's pro se complaint and simultaneously

made a demand for payment in a letter to the Town, and, thereafter, negotiations and litigation occurred.  The Table below graphically summarizes the history of those settlement discussions contrasted claim-by-claim with the results obtained.[5]

| CLAIM | DEMAND of Oct. 4, 2004 except as to attorney's fees | OFFER of December 13, 2004 | OFFER of March 15, 2005 | OBTAINED |
|---|---|---|---|---|
| Vacation pay | $624 | $624 | $1,872 | $1,872 plus interest from June 4, 2004 plus filing fee of $150 |
| Unpaid days | $136.50 | $0 | $274 | see below |
| On call | Minimum $780 | $0 | $500 | see below |
| Friday afternoons | $2,527.20 | $0 | $0 | see below |
| Un-designated | Not applicable | $0 | $354 | $1,000 |
| Costs and Attorney's Fees | $1,095 on vacation count as of December 16, 2004 | $0 | $2,000 | Undetermined as of this date, but plainly far in excess of anything ever offered |
| Total | $5,162.70 (for single damages)[6] | $624.00 | $5,000 | $2,872 plus interest from June 4, 2004, plus filing fee of $150, plus reasonable attorney's fee anticipated to exceed $40,000 |

At the time his Counsel took over the case and filed an Amended Complaint in October 2004, Fulton had incurred only a nominal amount of attorney's fees estimated at

---

[5] The first column describes the claims asserted; the second, the amounts sought as of the filing of the Amended Complaint for each claim; the third, the offer made by the Town two and a half months thereafter; the fourth, the offer made by the Town another three months later; and the fifth and final column, the amounts obtained.

[6] Plainly this demand figure would have been compromised; certainly attorney's fee portion, which is 40% of the demand would have been compromised to a figure close to what was offered only three months later.

$1,100. Using that estimate, prior to the Defendant Town's making its first settlement offer, Fulton was demanding approximately $5,000 (single damages only), including those estimated attorney's fees and costs. See Plaintiff's Demand Letter, Exhibit A hereto; Plaintiff's Amended Complaint and Jury Demand, on file with the Court. The Town offered $624. See Exhibit A to the Town's October 4, 2006 Opposition ("Hull's Opposition"). Surely Fulton could not have reasonably been expected at that time to accept the Town's offer. Had he done so, he would have recouped less than the Town acknowledged it owed him, because he had then incurred a filing fee and over $1,000 in attorney's fees.

Three months later, when Mr. Fulton's claims had increased to over ten thousand dollars ($10,000) due to his having incurred a modest amount of attorney's fees ($4,380) and including his trebled damages for vacation pay, the Town offered only half that amount ($5,000).[7] See Exhibit B to Hull's Opposition. Fulton's separate claim for trebled vacation pay amounted to more than half that amount, approximately what the Town was offering for all his claims combined. Given the Town's acknowledgment at this time of liability on that claim, it appeared ripe for settlement; however, the Town refused to settle that claim separately and refused to move on its offer for settlement of the entire case. This prompted Plaintiff to move for partial summary judgment believing it was likely to result in a judgment in excess of $5,000 on the vacation pay claim alone, and, thereby, effectively demonstrating to the Town why it made good sense to increase its offer.

---

[7] Almost certainly, had this amount been offered in December, the case would have settled.

9

Surprisingly, in May 2006, instead of responding to Fulton's Motion for Partial Summary Judgment by making a reasonable increase in its offer of settlement, the Town, in June 2006, opposed the Motion and filed an Offer of Judgment with the Court in the reduced amount of $1,872 (on file with the Court).

Ultimately, Fulton was able to obtain a Judgment by said Motion and an Agreement for Judgment for damages, interest and out of pocket costs of approximately $4,600 to $5,300 ($2,860, either three or five years of interest at the state rate of 12% adding another 36-60%, and costs (excluding legal fees) of nearly $700).  Hence, he recovered nearly three times the amount of the Offer of Judgment and as much as the Town's highest offer without any consideration of attorney's fees he owed his counsel for which he is absolutely entitled to an award of this Court.

As one can plainly determine, Mr. Fulton succeeded in obtaining a reasonable measure of what he sought only by litigating the case to the point he did.  The Town gave him no other alternatives at each step of the way.

As discussed in Section V, _infra_, because of the nature of his fee agreement with his Counsel, in considering any settlement offer, Fulton had to consider his liability to his attorney, and was appropriately circumscribed thereby.[8]  Had he accepted the Town's first offer, he would have received less than nothing for his entire claim.  Had he accepted the

---

[8] Even if he had a strictly contingency fee arrangement with his attorney, he would have had to have considered that he would have to pay a percentage of any settlement amount, plus costs incurred, to his Counsel.

Town's second offer, he would have owed his attorney nearly the full amount for which he settled, and, in effect, received only a few hundred dollars to cover his costs.[9] By continuing with the litigation, he has obtained a judgment for an appropriate sum (with interest approximately the amount he initially sought), and retained the right to seek a reasonable and appropriate award of fees, which, when made, may allow him to keep all or nearly all of the modest sums that were awarded to him. <u>See</u> Affidavit of Mark D. Stern in Support of Fulton's Consolidated Motion for an Award of Attorney's Fees ¶ 9. In this sense, it is manifest that the services rendered as a whole were entirely necessary to obtain a fair result for the client and to effectuate the purposes of the statute, that is, to obtain any semblance of a fair result for him.

While it certainly is unfortunate for the Town that an award of attorney's fees in this case will surely be so considerable as to dwarf the award of damages to Mr. Fulton, the Town should not be heard to complain about this unfortunate circumstances because it was entirely of its own creation. *City of Riverside v. Rivera*, 477 U.S. 561, 580, n. 11 (1986), <u>quoting</u> *Copeland v. Marshall*, 641 F.2d 880, 904 (D.C. Cir. 1980) (<u>en banc</u>) (A party should not be allowed to "...'litigate tenaciously and then be heard to complain about the time necessarily spent by the Plaintiff in response.'"); <u>see also</u> *Hedges v. Wauconda Community Unit School District No. 118*, 1993 WL 313527 (N.D. Ill. 1993). When it did not pay Mr. Fulton his vacation pay and, thereafter, not once made a reasonable offer to settle his claims,

---

[9] The settlement offered included only $3,000 for Fulton and capped his attorney's fees at $2,000, an amount far less than the amount for which he was even then liable.

it created and recreated anew its current circumstance.  All Mr. Fulton did was employ a

lawyer to pursue a two-and-half-year-old meritorious claim.  All his Counsel did was pursue

that claim after first asking the Town to settle it, which it unreasonably refused to do.

2.    **THE SERVICES RENDERED WERE IN THEIR COMPONENT PARTS
REASONABLE TO ACCOMPLISH WHAT THE CLIENT OBTAINED**.

As concerns the reasonableness of the component services that together make up the

fee application, a Table is again illustrative.  It reveals that lead Counsel spent approximately

sixty (60) hours preparing this case from his first interview with the claimant to the brink of

trial; his Associate less than twelve (12) hours, and his paralegals just over two (2) hours.

Thereafter he spent  approximately forty (40) hours on two separate applications for

attorney's fees, his Associate approximately five (5) hours, and his paralegals less than five

(5) hours.  Contrast this, for example, with the more than 825 hours of lead counsel time

expended on the FLSA claims in *Mogilevsky*, 311 F. Supp. 2d @ 219.

| Dates | Work Performed | Hours Expended |
|---|---|---|
| June 11, 2004 - October 11, 2004 | Research and investigation to prepare an amended complaint | Lead attorney: 6.5; Associate: 6.3 |
| October 11, 2004 - December 20, 2004 | Service and efforts to settle | Lead attorney: 4; Associate: 2.5 |
| December 21, 2004 - February 14, 2005 | Preliminary litigation up to Court conference of case | Lead attorney: 7.75; Associate 5.2 |
| February 15, 2005 - April 11, 2005 | Discovery, response to counterclaim, and negotiations leading up to offer of settlement | Lead attorney: 5.65 |
| May 2005 - March 2006 | Miscellaneous correspondence with client | Lead attorney: 2.1 |

12

| April 3, 2006 - July 11, 2006 | Preparation for motion for partial summary judgment | Lead attorney: 14.40; Paralegal: .35 |
|---|---|---|
| July 12, 2006 - August 4, 2006 | Miscellaneous tasks | Lead attorney: 2.4 |
| August 23, 2006 - November 30, 2006 | Review of Decision and application for attorney's fees, opposition thereto, and response to opposition | Lead attorney: 25.40; Paralegal: 1.85 |
| Dec 6, 2006 - March 2007 | Preparation for trial and pre-trial | Lead attorney: 9.1; Associate: .30 |
| March 2, 2007 - April 12, 2007 | Final discovery in prep for trial and related research; settlement discussions; order of court | Lead attorney: 7.2 |
| April 13, 2007 - present | Modified/updated legal fee application | Lead attorney: 14.25; Associate: 1.75; Law student: 25.15; Paralegal: .8 |

In the five months after taking over the case, Counsel and his Associate began researching, investigating and otherwise preparing the amended complaint filed on October 11, 2004 for approximately a dozen hours equally divided between Lead Counsel and an Associate for whom a far reduced hourly rate is sought. After service of the Amended Complaint, Counsel and his Associate spent another half dozen hours over approximately two months attempting to settle the case. When those settlement efforts proved unsuccessful, Counsel and his Associate were forced to focus their efforts on preliminary litigation of the issue before attending the Court conference of the case for a total of another dozen hours.

Following the Court conference, Counsel began gathering discovery materials, responding to Defendant's counterclaim, and participating in negotiations leading up to an

13

offer of settlement for another half dozen hours.  In the next ten months Counsel's work on the case was limited to necessary correspondence with the Plaintiff for a few hours.  Once it was apparent that settlement efforts had again proven unsuccessful, Counsel spent another dozen hours over the next three months preparing Plaintiff's Motion for Partial Summary Judgment, employing paralegal assistance when he could.  After Plaintiff's Motion for Partial Summary Judgement was filed on July 11, 2006, Counsel's work on the case during the subsequent month was restricted solely to a few hours of necessary communications with Plaintiff and the opposing attorney.

When the Court's decision of August 23, 2006 granted Plaintiff's Motion for Partial Summary Judgement, Counsel drafted an initial Application for Attorney's Fees and responded to the Town's Opposition thereto.  The entirety of this process over three months required two dozen hours of work by Counsel and a few hours of paralegal assistance.  For three months thereafter Counsel and his associate focused their efforts on preparing for the pre-trial conference and for trial on the remaining issues present in the case for a total of ten hours.  For the next month, Counsel gathered final discovery and research in preparation for trial, and participated in settlement discussions with the Town for a handful of additional hours.  Since the Judgement of the Court entered on April 12, 2007, Lead Counsel has spent approximately a dozen additional hours modifying and updating Counsel's initial Application, his Associate less than two hours, and his Law Clerk approximately two dozen hours.

## V.    APPROPRIATE MARKET RATE

14

The Plaintiff has presented the Court with a number of Affidavits indicating the appropriate market rates for his Counsel's services.[10]  While all of the Affidavits presented to some degree address this question, that is, describe the experience, reputation and skill of Plaintiff's Counsel, several specifically address the question of current rates appropriate for Counsel's services: the Affidavits of Thomas Shapiro, Barry Klickstein, Andrew Fischer and Joanne Fray.

These and other affiants describe their familiarity with the work of Plaintiff's lead Counsel.  He is recognized for his extensive experience, excellent reputation and expert abilities.[11]  The supporting affiants attest that Mr. Stern reasonably requests $450 per hour which is well within the lower range of fees charged for similar work by Boston law firms for the services of practitioners of similar experience (Affidavits of T. Shapiro, B. Klickstein, J. Fray and A. Fischer).

## VI.    EXTENT OF SUCCESS

In its Decision granting Plaintiff's Motion for Partial Summary Judgment and

---

[10] See Affidavit of Mark D. Stern of September 6, 2006.

[11] Affiants supporting the application in this case or in previous cases describe Mr. Stern or his credentials as "one of the most intelligent, resourceful, hardworking and tenacious attorneys I have ever encountered" (Affidavit of B. Hiller), "one of the most effective attorneys,... organized, diligent, articulate and persuasive,... a formidable adversary and zealous advocate" (Affidavit of J. Mason), "an outstanding litigator, knowledgeable, smart, skillful, and hard working" (Affidavit of J. Somberg), . . . and both "a first rate attorney with an excellent reputation (Affidavits of T. Shapiro and B. Klickstein), and "an experienced and able trial and appellate lawyer" (Affidavit of A. Fischer).   In one set of words or another, all of these experienced attorneys/judges state that compensation for his services should be commensurate with attorneys with thirty years experience in Boston law firms.

attorney's fees, the Court ordered the Plaintiff to submit an application that requested fees "proportional with the amount of the Judgment." Memorandum and Order, Lasker, J., of August 22, 2006. Plaintiff's Counsel has not done so, and properly so.[12] Rather, Plaintiff's Counsel submits an application consistent with applicable law, which says, as discussed previously, once a court has calculated the basic measure/lodestar fee award, the court's discretion to reduce the fee award is very restricted. See Section II, supra. As noted above, the amount of the Judgment is not a part of the basic measure of a reasonable fee, and a basic measure should not be reduced "proportionately" to the "amount of the Judgment" under applicable law addressing what is or is not an appropriate up or down adjustment to a basic measure.

Indeed, in a case such as this one where fees are disproportionately large in comparison to the damages recovered, the dis-proportionality has been explicitly contemplated and has been repeatedly determined to not call for a substantial reduction in

---

[12] After the Court issued its Decision for Partial Summary Judgment and issued its order for the Plaintiff to submit an application that requested fees proportional with the amount of the Judgment, Plaintiff's Counsel for precisely the reasons discussed below in *Fegley* and *Roofers Local 307*, Plaintiff filed a Motion for Reconsideration or Alternatively Motion for Leave for His Counsel to Withdraw his General Appearance on Behalf of Plaintiff, stating that due to the Court's "proportionate" ruling and because Plaintiff's claims only requested a few thousand dollars, "Plaintiff will be better off financially if he incompetently tries his own case and loses on all his claims than he would by being competently represented by Counsel and prevailing on some or all of the remaining claims in this case." In response, the Court clarified that it did not mean the attorney's fee award would be measured proportionate to the amount of damages recovered and therefore denied the motion. In light of this clarification, Plaintiff is submitting this Consolidated Motion for an Assessment of Costs Including Reasonable Attorneys' Fees and Interest Thereon that is not reduced on account of the small amount of damages sought and the relatively comparable amount of damages recovered.

fees or a substantial deviation from the basic measure/lodestar calculation. For example, in *Fegley v. Higgins*, 19 F.3d 1126 (6th Cir. 1994), Courts have held in wage and hour cases that "courts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees here "encourages the vindication of congressionally identified policies and rights." *Fegley*, 19 F.3d @ 1134 - 35, quoting *Roofers Local 307 v. G & M Roofing*, 732 F.2d 495, 503 (6th Cir. 1984); see also *Roofers Local 307*, 732 F.2d at 503 ("Transfixion on the damage amount in establishing fees would penalize those litigants whose cases carry slight pecuniary damages, but which present instances of significant statutory violations.").

Hence, for example, in *Mogilevsky v. Bally Total Fitness Corp.*, 311 F. Supp. 2d 212 (D. Mass. 2004), where the plaintiff initially demanded $110,000 exclusive of attorney's fees for his FLSA claims (see Affidavit of Harvey Shapiro) but only received a judgment of $4,567.21 (*Id.* @ 215), said Counsel's application for over $92,000 in attorney's fees relating to the FLSA claims (*Id.* @ 221), though reduced for any number of reasons, was not reduced substantially due to the plaintiff's small recovery. Instead, this Court reduced the "lodestar amount" only by 15% in light of the plaintiff's limited success, including the failure to obtain a final judgment more favorable than a Rule 68 Offer (*Id.* at 220), and the failure to succeed on five of Plaintiff's FLSA-related claims (*Id.* at 221). Despite the fact that Plaintiff Fulton received a far greater degree of success than did Mogilevsky, Counsel views a 15% overall reduction in light of Mr. Fulton's partial success as appropriate in the case before this

Court.[13]

Even if this Court views the extent of Counsel's success as a necessary consideration in the fee valuation process, Plaintiff's success supports the full award (reduced by 15%) of Plaintiff's attorney fee request. The First Circuit Court of Appeals has adopted three factors when weighing the extent of Plaintiff's success: (1) "a plaintiff's success claim by claim;" (2) "the relief actually achieved"; and (3) "the societal importance of the right which has been vindicated." *Coutin v. Young & Rubicon Puerto Rico, Inc.*, 124 F.3d 331, 338 (1st Cir. 1997).

## 1.    PLAINTIFF'S SUCCESS CLAIM BY CLAIM

As shown by the chart in section III(B)(2), supra, Plaintiff functionally succeeded on three of his four claims. Plaintiff entirely prevailed on his primary claim for unpaid vacation time through the Court's decision granting partial summary judgment. While it is fair to say Plaintiff collected nothing on his claim for Friday afternoon wages, Plaintiff successfully collected his base demand for his two remaining claims, his unpaid days worked and his unpaid on-call wages, through the Agreement for Judgment. One could say Plaintiff has hit a home run on his vacation pay claim, struck out on his Friday afternoon wage claim, got two base hits on his claims for unpaid days worked and on-call wages, and is waiting for a mandated attorney's fee award to bring his runners home. Surely, even for the April and

---

[13] Rather, Plaintiff is submitting an application reduced by the same amount used by this Court in *Mogilevsky*, where his success is at least ten times greater than the success in *Mogilevsky*. See Affidavit of Harvey Shapiro (Plaintiff demanded a total of $709,668 exclusive of costs and recovered through Judgment and settlement less than $75,000).

May 2007 Red Sox, that would be a most successful start of an inning.

### 2.    RESULTS ACTUALLY ACHIEVED

Plaintiff's final outcome is far more favorable than what Plaintiff could have recovered without litigating his case, as shown by the chart in section III(B)(2), supra. After declining two settlement offers, one that would have left Plaintiff with less than nothing after paying his Counsel and another that would have left Plaintiff with only a few hundred dollars above his costs, Plaintiff ultimately received a damage award and settlement that when statutory interest and costs are added will equal or exceed Plaintiff's initial demand, and has fully retained his right to add thereto an award of attorney's fees.

### 3.    SOCIETAL IMPORTANCE OF
### THE RIGHT WHICH HAS BEEN VINDICATED

Rights protected by the FLSA aim "to aid the unprotected, unorganized and lowest paid of the nation's working population." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707, n.18 (1945), quoting FLSA legislative history. Thus, "FLSA cases [] involve rights that are important in themselves, and Congress has implicitly made a judgment that FLSA suits are likely to lead to changes in an employer's practices that have effects beyond the immediate suit. *Id.* at 706 - 07, nn.17 - 18. The present case is a textbook example of the type of Plaintiff and claim the FLSA seeks to protect. The Defendant failed to pay the Plaintiff wages it acknowledged were due and owing to him, and, thereafter, though acknowledging its obligations in that part, continued to fail to do so, compelling Fulton to litigate against the Town to obtain any part of his due.

## VII.  REMAINING FACTORS APPLICABLE TO THE ISSUE BEFORE THE COURT

When considering whether to adjust the "basic measure" upwards or downwards, courts have also considered, inter alia, the novelty and difficulty of the case, whether the fee is fixed or contingent, desirability of the case, and the nature of the professional relationship with the client.  They do not, however, rely on these factors to erode or inflate a fee award dramatically from what is determined to be the "basic measure." Courts also consider other factors discussed below, but are clear that "the basic measure . . . should govern unless there are special reasons to depart from them." *Fontaine*, 415 Mass. at 325, quoting *Stratos*, supra; see also, *Draper v. Town Clerk of Greenfield*, 284 Mass. 444, 455 (1981), cert. den. sub nom.

The first factor, the novelty and difficulty of the case, does not require a significant measure of concern in the present case.  Plaintiff's counsel concedes that the unpaid vacation wage claim, the claim on which partial summary judgment was granted, was neither novel nor difficult.  However, the remaining claims for which settlement was accepted, the remaining unpaid work days and the unpaid on-call wages, were difficult because of a lack of available documentation.

Another consideration is whether the fee was partially or entirely contingent upon obtaining a favorable result.  In this case, as will be discussed below, the fee was not entirely contingent.  On the other hand, consideration of that fact and the purpose of the statute mandate that a considerable award be made.  This is because, absent such an award, the

Plaintiff, who partially prevailed, will actually lose a considerable sum of money by having pursued his claims, even though his attorney has discounted his services to the Plaintiff.

Mr. Fulton has the agreement with his counsel whereby he was responsible for at least a portion of his fees irrespective of whether or not, he prevailed, and for a greater portion where he did in fact prevail. Hence, Mr. Fulton, irrespective of what award is made to his attorney by this Court, may have responsibility for fees to be paid to his attorney above and beyond what is awarded by the Court. If, for example, the award of attorneys fees to him is less than the amount he owes under the fee agreement, he will then be obliged to pay a portion of his recovery for damages to his attorney. If the amount for which he was responsible based on these calculations to his attorney exceeds both the award of damages and the award of attorneys fees, he will in effect end up losing money by winning one part of his suit entirely and two-thirds of the remainder partially.[14]

Among the additional factors, desirability of the work and the nature of the professional relationship with the client are the only others deserving particular attention. This case is, as the Court recognized, not one a private practitioner would generally find to be desirable. It does not involve the large sums about which lead Counsel is ordinarily accustomed to litigate. See description of cases in Affidavit of Mark D. Stern. It will not

---

[14] Such an outcome is represented by Plaintiff Fulton's denial of Defendant Hull's settlement offer. On March 15, 2005, Defendant Hull offered $3,000 in settlement for damages and $2,000 in settlement for legal fees. At that point in time, Plaintiff Fulton already owed his attorney approximately $4,380. The $5,000 settlement offer would have effectively left Plaintiff Fulton with nothing. By denying the settlement, Plaintiff obtained an equivalent amount in damages and in no way expects $2,000 or less in attorney fees.

likely lead to his procurement in the future of any more lucrative work, or his having a lucrative relationship with this particular client. Affidavit of Mark D. Stern.  Hence, these factors all suggest the propriety of an upwards adjustment of the basic measure fee, an adjustment Counsel does **not** request.

## VI.    CONCLUSION

Fulton has requested a reasonable fee for his Counsel and it should be awarded to him within any downward adjustments.

By his attorney,

*s/ Mark D. Stern*

Mark D. Stern
BBO #479500
**Mark D. Stern, P.C.**
34 Liberty Avenue
Somerville, MA 02144
Tel. (617) 776-4020
Fax  (617) 776-9250
email: markdsternpc@rcn.com

Dated: May 31, 2007