UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BOYD FULTON,<br>    Plaintiff<br><br>v.<br><br>TOWN OF HULL, MASSACHUSETTS,<br>    Defendant | Civil Action No.2004 CV 11234 MEL |

**AFFIDAVIT OF MARK D. STERN IN SUPPORT OF**
**FULTON'S CONSOLIDATED MOTION FOR AN AWARD OF ATTORNEY'S FEES**

    I Mark D. Stern swear under the pain and penalty of perjury that the following statements are true, accurate and complete, and known to me personally unless otherwise indicated to be known to me only on information and belief.

    1. I am a graduate of Brown University (1966) and Harvard Law School (l969). I graduated both institutions cum laude and with honors. I was admitted to the following bars on the following dates:

    A.    Bar of the Commonwealth of Massachusetts (April 1970);

    B.    Bar of the United States District Court for the District of Massachusetts (April 1970);

    C.    Bar of the First Circuit Court of Appeals (September 1976);

    D.    Bar of the Second Circuit Court of Appeals (January 1980); and

    E.    Bar of the Supreme Court of the United States (October 1982).

    2. I have been actively engaged in the practice of law since 1972, specializing in litigation, and in particular housing law, employment law and civil rights litigation. Before that time I was an Instructor at Wellesley College, a Teaching Assistant at Harvard College, and Director of Housing,

Education and Family Services for the Mayor's Office of Human Rights of the City of Boston.

3.   I am presently in solo private practice with one associate.  Before that I was a partner in the law firms of Goldstein, Pressman, Stern and Hiller, Cambridge, MA, and Galvin and Stern, and Stern and Zack in East Boston, MA.

4.   For most of the time that I have been in practice, I have concentrated on complex litigation, frequently on the other side from the largest and most prestigious law firms in the Boston area.  During that time I have had the opportunity to break new ground in a number of areas.  In many of these cases I have garnered experience and demonstrated my abilities as an appellate advocate .  I mention only a handful of these below.

   A.   In the areas of housing law rights, in 1982 my clients in the Vieira case won the first significant damage judgment (nearly $2,000,000) for asymptomatically lead poisoned children; this case settled after a successful appellate oral argument.

   B.   A decade earlier, in the two Kargman cases at the First Circuit Court of Appeals, my clients prevailed on questions of federal supremacy related to rent control regulation, and on reviving the common fund legal fee doctrine.

   C.   A decade later, in the 1990's I obtained a contempt judgment in the Anderson case for more than a hundred, most elderly tenants in Brookline after several successful defenses of appeals taken to the Supreme Judicial Court and Single Justices thereof.

   D.   In the area of employment law, in 1983 my client in the Irvine case, a teacher who assisted her students in filing sex harassment charges against her supervisor/their professor, won $350,000 on account of the ensuing retaliation she suffered.

   E.   In 2000 my client in the Cummings case won nearly $2,000,000 on an age discrimination claim, upheld by the First Circuit Court of Appeals.

   F.   In 2006 I won an appeal in the case of Moore Trust v. Din-Dayal obtaining a judgment for my client in a retaliatory eviction case; reconsideration of the discrimination claim, damages and attorneys fees are pending decision.

   G.   In the area of labor union democracy, in the early 1980's my clients in the Crowley

      case obtained pre-election relief for Teamster dissidents who incumbent officers prevented from running against them. On certiorari, the U.S. Supreme Court limited the right to such relief, but expanded pre-existing rights.

G.     In 1988 my client in the <u>Doty</u> case was awarded a $550,000 jury verdict against a local union and its officials who had intimidated and inhibited him from advocating for democratic changes in the union. The Verdict was sustained on appeal.

H.     In an earlier appeal on behalf of Mr. Doty I established a three year statute of limitations for LMRDA violations in the First Circuit despite the fact that other circuits had held the statute of limitations was six months; the decision was later cited in a Supreme Court case adopting the three year statute of limitations.

I.     In other areas of labor law, my clients in <u>U.E. v. Pleasant Street Corporation</u>, union retirees, were granted the right to proceed under ERISA against a foreign corporation which owned and controlled their defunct, former employer for health and life insurance benefits.

J.     My clients in the <u>Boston Jobs Coalition</u> case successfully defended the City of Boston's resident and women's quota's for construction work before the Massachusetts Supreme Judicial Court.

K.     My client in <u>In re Walter</u> established the right of a husband to custody of his wife's son without having to prove his paternity.

5. I have taught litigation skills for the New England School of Law, the Advocacy Training Institute, the Massachusetts Lawyers Guild, and the Suffolk Law School Community Education Project. I have also put on presentations for the Massachusetts Association of Trial Lawyers and the Massachusetts Lawyers Guild, and at Northeastern University Law School, Suffolk University Law School, Harvard Law School, Boston College Law School and Boston University Law School. I served on the Advisory Board for the Advocacy Training Institute in 1984 <u>et seq.</u>, have served on the Workers Rights Board of Jobs with Justice, and on the approved list of Commissioners for the Supreme Judicial Court/Board of Bar Overseers.

6. I have chaired national committees of one bar association for several years in both

3

the housing and labor/employment areas, respectively from 1974-76 in the housing area and 1977-80 in the labor/employment area.

7. I have regularly received both referrals from individuals and institutions, and requests for assistance from attorneys in housing litigation, employment and civil rights/discrimination litigation.

8. I have done two cases for Mr. Fulton, the present case and the final piece of a Civil Service case. As discussed below, my work on the two cases began simultaneously in June, 2004.[1] Before that I had consulted with him in December 2003 and January 2004 on the same matters. I do not have any expectation that my relationship with this client will result in my obtaining any future, much less lucrative business.

9. My office commenced working on this proceeding on an hourly basis, but Mr. Fulton discontinued paying me some time ago, and I have worked since then on a de facto contingency fee basis, that is, only had an expectation of payment if he prevailed on some or all of his claims. Now that he has prevailed on most of his claims, this office can collect the non-contingent fees he owes from the damages, interest and costs awarded or to be awarded to him.[2] If an award of attorney's

---

[1] My work on the Civil Service matter concluded after a motion hearing in November 2004.

[2] Under his fee agreement, Mr. Fulton is responsible to his attorneys for all services rendered at variable fee rates. For services that ultimately turned out to be anything other than successful, he is responsible at the rate of $150 per hour for the services of his Lead Counsel. For services that were ultimately successful he is responsible at the rate of $300 per hour. He was responsible at market rate for any services for which the Court made an award to Counsel. Finally, he was responsible for the rate of Lead Counsel's Associate and paralegal workers at considerably reduced hourly rates of $150/$90 and $40/$20 that ultimately successful. Using these parameters, using $225 for services rendered that were partially successfully, and using the lower rate only for all services rendered by my Associate, and not counting any of the time expended at the rate which Counsel might/should be given an award by the court, I did the following calculations as to what Mr. Fulton currently owes this office for services in this case and would owe this office if the Court made no award to his Counsel..

4

fees exceeds the balance due to this office on said non-contingent fees, the client will receive the damages and other costs in their entirety. If it does not, what he receives will be reduced by said amount and/or entirely employed for said purpose.

10. I have maintained detailed time records of the work done for Mr. Fulton, and have reproduced them in a typed format in Addendum A hereto. I have reviewed those statements and certify that they are accurate and complete.

11. The hours I expended and detailed on Addendum A hereto[3] generally include only time that I was working to produce a pleading, correspondence or the like. The Addendum does not, in the exercise of billing judgment, include time I spent thinking about the case, and talking to other people about issues in the case and how to approach them.

| Hours of services charged | At rate per hour of | Total in dollars |
|---|---|---|
| 45.6   Stern | $300 | $13,680 |
| 56.9   Stern | $225 | $12,802.50 |
| 3.55   Stern | $150 | $532.50 |
| 14.7   Conley | $90 | $1,323 |
| 33.3   Student/Paralegal | $40 | $1,332 |
| .35   Student Paralegal | $20 | $7 |
| 9.35  Stern | no charge | $0 |
| .5    Conley | no charge | $0 |
| Fees Owed to Attorney | Excluding Expenses | $29,677 |

[3] Addendum A and the resume of Jamie Fugitt, Exhibit J, are attached to this Affidavit. The remainder of the Exhibits were attached to the Affidavit of Mark D. Stern In Support of Fulton's Motion for an Award of Attorney's Fees filed on September 6, 2006 and will not be reproduced as attachments to this Affidavit.

12. When in September 2006 I sought attorney's fees only for his having prevailed on his vacation pay claim, I sub-categorized the services I rendered for Mr. Fulton into several categories. Since the case is now fully concluded on the merits, I have not sub-categorized the work done in categories to which I assigned different rates, but rather reduced the fee request for the following items.

> A. Services rendered on the Civil Service case were automatically billed as no charge in the Addendum. These hours represent a $3,982.50 credit for my ( Lead Counsel) time (8.85 hours x $450/hr) and a $112.50 credit Associate's time (0.5 hours x $225/hr).
>
> B. A further $225 reduction of my time was automatically billed as no charge for a telephone conversation with a reporter for The Patriot Ledger, and review of and reply to a letter from the client unrelated to the merits of this suit (0.5 hours x $450/hr).
>
> C. Time expended by me on both this case and the Civil Service case was billed at half rate, $225/hour, representing a $180 credit (0.8 hours x $225).
>
> D. When my Associate and I both met with the client, or when we worked together on a single task, the time expended by my Associate was reduced by one-third to account for possible duplication of efforts. This represents a $776.25 credit (10.35 hours x $225/hr x 1/3).
>
> E. Paralegal tasks performed by me and my Associate were billed at $50 an hour, representing a $340 credit for lead Counsel's time (.85 x $400), and a $35 credit for Associate's time (.2 x $175).

Thereafter we further reduced the overall request by fifteen percent (15%) to reflect the fact that Fulton prevailed on fewer than all his claims and only partially on some of them

13. Care was taken throughout the entirety of the litigation to assure that the tasks required to be done were allocated between lawyers and paralegal staff to accomplish a maximum of economies and the best possible results. These tasks were performed by my part-time associate, Donna Conley, former paralegal assistant Elizabeth Clemons, and current law student Jamie Fugitt.

I personally coordinated all the aforementioned persons' efforts in such a fashion to insure that there was no duplication of effort, and to assure that the best possible case was presented to this Court. In my view none of the services rendered by any of these persons and none of the costs incurred duplicated any services rendered or costs incurred by any other person.

14. Appended to my Affidavit of September 6, 2006 are copies of a number of affidavits relating to my experience, skill, and reputation as an attorney, and what constitutes a reasonable hourly rate for my services in this case. They are from Attorneys Thomas Shapiro (Exhibit A thereto), Barry Klickstein (Exhibit B thereto), Joanne Fray (Exhibit C thereto), John Mason, Jr. (Exhibit D thereto), Andrew Fischer (Exhibit E thereto), Judith Somberg (Exhibit F thereto), and Benjamin Hiller (Exhibit G thereto).[4]

15. For my services in this case I am advised that the rate of $450 is at the far low end of what attorneys of my experience, reputation and skill charge for litigation services in the Boston area.. I have used the base rate of $225 for Attorney Conley, and $40 per hour for paralegal and law student services provided by my office. The resumes of Attorney Conley and Paralegal Clemens were appended as Exhibits H & I to my September 6, 2006 Affidavit. The resume of my law Clerk Jamie Fugitt is appended hereto.

16. The filing fee incurred by Mr. Fulton himself was $150; a copy of the receipt for said filing fee is appended as Exhibit K hereto. Said fee would have been incurred had he pursued only the sole claim on which he has prevailed to date. The costs my office expended on Mr. Fulton's behalf totaled $678.19 and are detailed in the Addendum hereto.

---

[4] As the headings indicate, I procured them for use in other cases and with the exception of the Hiller Affidavit, I recently employed in a state court appellate procedure in which my client prevailed after an adverse trial court decision on her housing discrimination and retaliation claims.

Signed this 31st day of May 2007

*s/ Mark D. Stern*

Mark D. Stern