UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 2004 CV 11234
MEL

)
BOYD FULTON,                               )
                          Plaintiff        )
                                           )
VS.                                        )
                                           )
TOWN OF HULL,                              )
MASSACHUSETTS                              )
                          Defendant        )
                                           )

**DEFENDANT TOWN OF HULL'S OPPOSITION TO PLAINTIFF'S CONSOLIDATED
MOTION FOR AN ASSESSMENT OF COSTS INCLUDING REASONABLE
ATTORNEY'S FEES AND INTEREST THEREON
AND REQUEST FOR ORAL ARGUMENT ON SAME**

Now comes the defendant Town of Hull (Town) and pursuant to the Local Rules

herewith provides its opposition to the plaintiff's Motion for an Assessment of Costs

Including Reasonable Attorney's Fees and Interest Thereon and further requests a

hearing on same.  The plaintiff now[1] seeks attorney's fees and costs in the amount of

$41,601.86 for having recovered a partial summary judgment in the amount of only

$1,872.00 in damages and $1,000.00 by an agreement for judgment, for a grand total of

$2,872.00.  It is even arguable if the plaintiff actually recovered those damages, as the

Town had agreed to pay them (see below).

---

[1]  As discussed more fully below, this is the second request for attorneys from the plaintiff.  Following the partial
summary judgment, the plaintiff filed a motion for attorneys, then seeking some $12,000.00 in fees and costs for
what was at that time a recovery under partial summary judgment of $1,872.00.  A hearing was held before the
Court on November 30, 2006, at which time the Court determined that it was appropriate to wait until the
completion of the case to award attorneys fees.  Since then, the case settled with an agreement for judgment for an
additional $1,000.00 plus the $1,872.00.  Incredibly, the plaintiff now seeks attorney's fees of $41,601.86, *almost 3
½ times the prior request and 15 times the amount recovered by the plaintiff.*

## BACKGROUND

This is a suit by a former employee of the Town, based on claims of violations of the Fair Labor Standards Act (FLSA) and the comparable Massachusetts wage laws.

The plaintiff made various claims under both the Massachusetts wage law and the FLSA.  In summary, these claims included:

1.    Count I- Failure to pay compensatory time allegedly in violation of the FLSA;

2.    Count II- Failure to allow compensatory time off, allegedly in violation of the FLSA;

3.    Count III- Failure to pay overtime while allegedly on call, allegedly in violation of the FLSA;

4.    Count IV- Non-Compliance with the Massachusetts Weekly Payment of Wages Act- including failure to pay vacation pay, failure to pay for time allegedly worked on two occasions. [2]

The federal complaint in this court was initially filed pro-se by the plaintiff. Sometime after that, present counsel entered an appearance in the federal case and filed one or more amended complaints.

After the complaint was filed and amended and counsel entered the litigation, a request was made to the Town for it to accept service of the complaint, which it did.

On or about October 4, 2004, plaintiff's counsel wrote the Town's counsel setting forth a summary of the plaintiff's claims and demands.  This letter has been submitted to the Court by the plaintiff as Exhibit A to his pending motion for attorney's fees.

---

[2]   The plaintiff also made claims to the state Civil Service Commission, Labor Relations Commission and Massachusetts Commission Against Discrimination, and the federal EEOC.  All of these claims have been dismissed against the plaintiff.

On or about December 13, 2004, the Town, through the undersigned counsel, wrote to plaintiff's counsel and responded generally to the allegations.  Of note, the Town acknowledged as early as this December 13, 2004 letter that by "error and oversight the Town failed to pay your client for the one week's vacation time he had earned by the time of his separation from employment.  We regret that error and are willing to rectify same."  See Exhibit A, Town's letter of December 13, 2004, attached hereto and incorporated by reference herein.

As related to the other claims made, the Town responded in Exhibit A that after careful examination of the other claims, it found that there was no basis for same, as the plaintiff had been paid for all time worked and that he did not serve as the on call or call back employee and that he did not earn compensatory time off.

The Town also requested any information plaintiff had which supported the other claims.

The Town, consistent with its offer to rectify the non-payment of vacation pay, asked in that letter that the plaintiff's counsel contact the Town relative to resolving that issue.

The parties engaged in a period of voluntary discovery, exchanging such documents that each had that related to the claims.  Since the Town as the former employer of the plaintiff had more documents, this generally involved in the Town supplying numerous records to the plaintiff.  As there was no dispute by the Town of the plaintiff's entitlement to the vacation pay, these documents dealt almost exclusively with the other claims which remained in dispute.

In the interest of settling the matter entirely, the Town wrote to plaintiff's counsel a detailed settlement proposal on or about March 15, 2005.  See Exhibit B, Town's letter of March 15, 2005, attached hereto and incorporated by reference herein.[3]

In Exhibit B, the Town again acknowledged that the plaintiff was entitled to the vacation pay.  In fact, although not legally required to do so, the Town in that letter offered to treble the vacation pay and pay $1,872.00 to the plaintiff for same.  Various other responses, several involving paying disputed claims in an effort to settle the matter, were also made in this letter.

There were various communications between the Town and the plaintiff concerning the claims and requests for information, clarifications, etc.

The plaintiff eventually filed a motion for partial summary judgment, seeking recovery on only two aspects of the case.  One was the already acknowledged vacation pay for which the Town had never disputed owing the plaintiff.  The other aspect related to the plaintiff's claims that he was entitled to call back pay, which the Town strongly disputed.

The Town filed an opposition to the motion for partial summary judgment.

The Town also filed a Rule 68 Offer in the amount of $1,872.00.  That Rule 68 Offer has never been responded to by the plaintiff.

Following the hearing before the Court, the Court issued its decision on the

---

[3] At the hearing on the Plaintiff's Motion for Partial Summary Judgment the issue of introducing this letter, Exhibit B, was raised.  Plaintiff's counsel kindly suggested that introducing the letter may be a violation of ethical rules as it related to settlement offers.  At that time there was a stipulation (oral) that such a letter was sent, but the actual introduction of same was left to the Town, which ultimately did not introduce the letter in relation to that hearing.  Subsequent to that hearing, the Town's counsel has obtained an opinion from the Massachusetts Bar Association's Committee on Professional Ethics indicating no ethical issues involved in the Town introducing this letter.  A verbal opinion along the same lines was received from an attorney at the Board of Bar Overseers.

motion for partial summary judgment.

Not surprisingly, given the Town's several prior acknowledgements that the vacation pay was due, and in fact the Town's acknowledgement of same and the trebling of same in the hearing, the Court quickly found for the plaintiff for the vacation pay in the amount of $1,872.00.

In terms of the other claim for call back pay, the Court recognized that there are valid disputed facts over that claim and denied summary judgment on that claim.

In its Memorandum and Order on the motion for partial summary judgment, as relates to the undisputed vacation pay, the court also ruled that "[R]easonable costs and attorney's fees, *proportional with the amount of judgment*, are GRANTED."  (Emphasis supplied)

Thus, the judgment under the motion for partial summary judgment, on a claim not disputed by the Town, was for $1,872.00, the same amount the Town offered in its Rule 68 Offer of Judgment.  The plaintiff therefore did not receive a judgment in excess of the Rule 68 Offer.

Plaintiff then submitted a motion for attorney's fees and costs in the amount of $12,603.36, which is approximately 6.7 times the amount of the judgment.

A hearing was held before the Court on November 30, 2006 on the plaintiff's request for $12,603.36 in attorney's fees and costs.  Of note, at that hearing the Court questioned why the motion was made before the case was over[4] and observed, and regarding the gross disparity between the amount "recovered" under the summary

judgment (which amount the Town offered) and the tremendous amount of attorneys fees sought commented that normally there would be a small fee for a small recovery.

Even more telling, the Court described at the hearing the request for over $12,000.00 in attorneys fees for a $1,872.00 recovery to be "absurd".

Ultimately, the Court determined that it was appropriate to wait until the completion of the case to award attorneys fees. Given the few remaining disputed claims, the Court strongly urged the parties to settle the case. In the event that the case was not settled, the Court assigned a trial date of March 5, 2007.

A further status conference was held before the Court on March 1, 2007. Again the Court strongly urged the parties to settle the matter within the next 30 days or the case would go forward for a trial.

Further discussions ensued between counsel.

The parties eventually arrived at an agreement whereby the Town would pay without any admitting liability and to avoid the need for a trial the sum of $1,000.00, and keeping open the plaintiff's claims for attorney's fees.

This agreement for judgment, on file with the Court, was submitted for approval to the Court, which approval was granted.

Of note, the Agreement for Judgment for $1,000.00 provided:

1.  This Agreement shall not constitute any admission of any liability or wrong-doing on the part of the Defendant Town, which is specifically denied and disputed. It is entered into by the Town only to facilitate settlement of this disputed claim and to avoid further expenditure of time, costs, legal expenses and the resources of the parties and the Court.

---

[4]  Plaintiff suggests in his memorandum, top of p. 16, that this Court in its prior ruling "ordered the Plaintiff to submit an application" for attorneys fees. A fair reading of the Court's decision on the motion for partial summary judgment reveals no such "order" was made.

2.    This Agreement shall fully resolve all claims and counterclaims that the Plaintiff and the Defendant have against the other party from the beginning of the world to the present, excepting;

    A.    Those already resolved by the Court on Plaintiffs Motion for Partial Summary Judgment, and

    B.    Any award the Court may grant for costs including reasonable attorney's fees to the Plaintiff:

        1.    On Plaintiffs pending motion for attorneys fees and costs and

        2.    On any motion for attorneys fees and costs related to the claims that are the subject of this Agreement. The Plaintiff may combine said request into one motion.

The Court shall retain jurisdiction to rule upon the aforementioned unresolved questions.

3.    The parties waive all rights of appeal as to matters determined by the Court on the partial summary judgment and resolved by this agreement for the $1,000.00. All other rights of appeal are reserved and not waived, meaning as relates to the award of attorneys fees and costs.

4.    It is agreed that the $1,000.00 agreement for judgment as to the remaining claims will not have any preclusive effect on an application for an award of fees under the statutes, meaning that the fact that it was via an Agreement for Judgment and not by judgment following trial or a hearing will not operate as a bar to moving for attorneys fees. The Town may make any other argument it wishes in regard to this matter, including ones for a reduced fee or even no fee for the portion of the judgment to which entry is agreed (the $1,000), as well as the partial summary judgment."

The plaintiff has now filed his motion for attorney's fees and costs. In this motion, the plaintiff now seeks attorney's fees of $41,601.86, *almost 3 ½ times the prior request for attorney's fees of $12,603.36* and *about 15 times* the total recovery of $2,872.00.

The Town herewith files its opposition to the motion for attorney's fees and costs and requests a hearing on same.

7

**ISSUE**

**WHETHER THE PLAINTIFF IS ENTITLED TO $41,601.86 IN ATTORNEYS FEES AND COSTS FOR A TOTAL RECOVERY OF ONLY $2,872.00 ($1,872.00 FROM A SUMMARY JUDGMENT THAT WAS NOT DISPUTED BY THE TOWN AND HAD BEEN ACKNOWLEDGED AS VALID SEVERAL TIMES, AND $1,000.00 BY AN AGREEMENT FOR JUDGMENT TO SETTLE A DISPUTED CLAIM)**

**ARGUMENT**

**THE PLAINTIFF IS NOT ENTITLED TO $41,601.86 IN ATTORNEYS FEES AND COSTS WHERE THE TOTAL RECOVERED WAS ONLY FOR $2,872.00 ($1,872.00 FROM A SUMMARY JUDGMENT THAT WAS NOT DISPUTED BY THE TOWN AND HAD BEEN ACKNOWLEDGED AS VALID SEVERAL TIMES, AND $1,000.00 BY AN AGREEMENT FOR JUDGMENT TO SETTLE A DISPUTED CLAIM)**

**I.    The plaintiff is only entitled to be paid, whatever the amount is, for claims on which he was successful.**

The plaintiff suggests in his motion and brief that following the partial summary judgment he was successful on the remainder of his claims and is thus a prevailing party in all claims.   The Town disputes this characterization.

The only claim that he recovered anything on in the traditional sense was the vacation claim, which as noted above, the Town acknowledged was due and owing to him.

The remainder of the suit was resolved by an Agreement for Judgment, which acknowledged that the claims remain disputed and that there is no admission of liability to the Town.

Thus, the only claim the plaintiff arguably prevailed on was the vacation pay claim. In evaluating the plaintiff's success on that claim, the Court should recall that the Town

8

in its response to the plaintiff's motion for partial summary judgment acknowledged owing the money and even offered, as it did in its Rule 68 Offer, trebled the one week's vacation which was inadvertently not paid to the plaintiff.

In many of the cases cited by the plaintiff, the matter went to trial. Here there was no trial. Also, in several of those cases, the issue was not payment of wages, but rather civil rights violations. The courts noted that there is a societal benefit when one pursues civil rights claims, even where the financial recovery is minimal, thus still entitling the plaintiff to an award of attorneys fees. The present case is not a civil rights case and there was no significant societal benefit.

The Town acknowledged it made an error in not paying the vacation pay when the plaintiff's employment was terminated. There has been no significant legal issue presented or adjudicated.

Interestingly, the plaintiff seeks to expand the size of his financial recovery by adding in interest. Plaintiff's brief, p. 10. This presents a distorted picture of the true recovery of only $2,872.00, which is what the plaintiff recovered. Costs and attorney's fees and interest are added on and are not normally considered part of the recovery when calculating an award to a plaintiff.

## II.    Attorney's fees are to be reasonable.

The fundamental principle concerning the award of attorneys fees where the same are permitted to be award by statute is that such fees are to be reasonable. In this case, the applicable law by which such fees may be awarded, G.L. c. 149, section 148,

provides in part that a litigant who prevails is entitled to "reasonable attorney fees".  A similar entitlement exists under the pertinent federal law, 29 U.S.C. Sec. 216(b).

What is reasonable depends on a variety of circumstances.  The law does not provide that that the attorney is entitled to be paid for all the time he or she may have expended in a matter.  Rather, the fees must be reasonable and that "reasonableness" depends on a variety of factors, often related to the nature of the litigation.

The court recognized this principle in its Memorandum and Order issued on the plaintiff's motion for partial summary judgment.  In that Memorandum and Order, the court ruled that "[R]easonable costs and attorney's fees, *proportional with the amount of judgment*, are GRANTED."  (Emphasis supplied)

While strict or mathematical formulation for proportionality is not required, the Town interprets the Court's suggestion of the attorneys fees being "proportional with the amount of the judgment" refers generally to the legal principles for establishing attorney's fees.  As noted below, and comparable to the concept of "proportionality", the key criteria is the result obtained, which here was a limited financial recovery.  "[T]he most critical factor is the degree of success obtained."  Hensley v. Eckerhart, 461 U.S. 424 at 436 (1983).

Thus, under the order of this court, the attorneys fees must satisfy two criteria-they must be reasonable and that reasonableness is to be viewed in proportion to the amount of the judgment, which in this instance, was only $1,872.00, on a claim that the Town had previously acknowledged and offered to pay in that amount.  The Court is

entitled to also consider the $1,000.00 under the Agreement for Judgment, for a grand recovery of $2,872.00.

The Town would respectfully argue, and urge the court to so find, that the requests from the plaintiff for attorneys fees and costs in the amount of $12,603.36 as originally requested and the now new total of $41,601.86 are neither reasonable nor in proportion to the amount of the judgment.

### III. Factors suggested by the law support the Town's position that the fee request is not reasonable or in proportion to the judgment and should be significantly reduced.

In <u>Fontaine v. EBTEC Corp.</u>, 415 Mass. 309 (1993), cited by the plaintiff in support of the fee petition, the law as set forth therein actually supports the Town's position more than the plaintiff's.

There the Supreme Judicial Court discussed various factors that should be taken into consideration in determining "reasonable attorney's fees".

Such factors were noted by the SJC to include:

- how long the trial lasted;

- the difficulty of the legal and factual issues involved;

- the degree of competence demonstrated by the attorney;

- the nature of the case and issues presented;

- the time and labor required;

- the amount of damages involved;

- the result obtained;

- the experience, reputation and ability of the attorney;

-     the usual price charged for similar services by other attorneys in the same area;

-     the amount of awards in similar cases

415 Mass. 324-325

Federal law is in accord.  In the leading case of <u>Farrar v. Hobby</u>, 506 U.S. 103  (1992)[5], the United States Supreme Court discussed how attorneys fees are to be awarded where such an award is, as in the present case, provided for by statute.   While the Supreme Court in <u>Farrar</u> was dealing with attorneys fees principles in general, it was also dealing with, as in the present case, a situation where the award of damages was essentially small ("nominal" in <u>Farrar</u>).  That compares to the present situation where the award on partial summary judgment, on a claim that was not disputed and acknowledged, was under $2,000.00, and another $1,000.00 by an Agreement for Judgment for a total of $2,872.00- a relatively small amount in federal litigation.

In <u>Farrar</u> the Supreme Court set forth several principles which are directly pertinent to the issues before the court and are consistent with the principles of the <u>Fontaine</u> case cited by the plaintiff.[6]

Among the instructions of the <u>Farrar</u> case are:

---

[5]   Page citations to the <u>Farrar</u> case are approximated, based on the version of the case obtained via the Social Law Library Fastcase research mode, which does not appear to insert actual page breaks as in the original text of the case. Thus, the page references are approximated by adding to the cite, 506 U.S. 103, the number of pages into the decision the referenced text appears.

[6] While the cause of action in <u>Farrar</u> was a civil rights claim, the Court's analysis was not limited to such claims, but included other claims as well.  The Court discussed such non-civil rights claims as shareholder actions, environmental claims, etc.

1.    "The most critical factor in determining a fee award's reasonableness "is the degree of success obtained."" 506 U.S. at 103, 109, citing <u>Hensley v. Eckerhart</u>, 461 U.S. 424 (1983).

2.    "Having considered the amount and nature of damages awarded, the court may lawfully award low fees or no fees …" 506 U.S. at 109.

3.    ""[A] technical victory may be so insignificant … as to be insufficient to support an award of attorney's fees."" 506 U.S. at 110, quoting <u>Hensley</u>, 461 at 792.

4.    The Supreme Court held that "when a plaintiff's victory is purely technical or de minimus, a district court need not go through the usual complexities involved in calculating attorney's fees."  "[I]t would be wasteful indeed to require that courts laboriously and mechanically go through those steps when the de minimus nature of the victory makes the proper fee immediately obvious."  506 U.S. at 111.

5.    The Supreme Court noted the rule that "even the prevailing plaintiff may be denied fees if "special circumstances would render [the] award unjust"". 504 U.S. at 111, quoting <u>Hensley</u>, 461 U.S. at 429.

6.    "[C]ourts also must look to other factors.  One is the significance of the legal issue on which the plaintiff claims to have prevailed." 506 U.S. at 112, citing <u>Texas State Teachers Assn. v. Garland Independent School Dist.</u>, 489 U.S. 782, 792 (1989).

See also <u>Wisnewski v. Champion Healthcare Corp.</u>, Civil Action No. A3-96-72 (D. N.D. January 16, 2001) where the calculation of attorneys' fees was described as a two part analysis- "first, determine the claims on which the plaintiff prevailed and, second, on the claims on which plaintiff prevailed, determine what amount of attorneys' fees *is appropriate, taking into consideration, the extent of the plaintiff's success on those claims*." P. 4; other internal citations omitted.  (Emphasis supplied)  This comports with the court's order that attorney's fees be proportional to the judgment.

**IV.    Applying the law to the facts of this case warrants a major reduction in the attorneys fees sought.**

13

Here, the plaintiff previously sought attorney's fees of over 6.7 times the partial judgment for damages granted by the court. The basic comparison of the award of $1,872.00 versus the attorneys fees of $12,603.36 being sought by the plaintiff is on its face not proportionate (as requested by this Court) and is grossly excessive given the amount of the award and the nature of the award.

Now, a few months after seeking the $12,000 in attorney's fees, the plaintiff seeks another $29,000.00 more for time spent on this case, which resulted in the parties negotiating a settlement of $1,000.00, for a total of $41,601.86, almost 15 times the amount of the recovery.

The "absurdity" (to use the apt word mentioned by the Court at the prior hearing on attorney's fees) is apparent on its face. This attempt to recover $41,601.86 in attorney's fees on a case of this nature boggles the mind. It almost comes close to the claim bandied about in the news recently of a lawyer who was seeking from a laundry over $50 million for a misplaced pair of pants.

      **a.**     **The present case resulted in a "limited success" for the plaintiff.**

Given the claims of the plaintiff, receiving a total of $2,872.00 in a federal law suit falls within the category of a limited success.

As such, all the time spent on the claims he was not successful on should be excluded from any calculations. <u>Hensley</u>, 461 U.S. at 440. This is consistent with the policy of awarding "a fee that is reasonable in relation to the results obtained." Id. <u>Hensley</u> also cautions that a full award of attorney's fees if the result was partial or limited would be excessive and not permitted. Id at 436.

14

Courts around the country recognize that the degree of success is the most critical factor in determining attorney's fees.  <u>Abrahamson v. The Board of Education of the Wappingers Falls Central School District</u>, 374 F.3d 66 (2004).  <u>Abrahamson</u> counsels that "[t]he District Court may, in its discretion, "attempt to identify specific hours that should be eliminated, or it may simply reduce the ]requested] award to account for the limited success."", quoting from <u>Hensley</u>, at 436-37.

Thus, this Court could try to decipher the hours which did not relate to the vacation pay issue and delete most if not all of those, or it could use its good sense and judicious discretion and reduce the $42,000.00 sought to an appropriate amount given the success achieved.

It is respectfully suggest not much has changed in attorney's fees evaluation since the prior memo submitted by the plaintiff- certainly nothing to justify a now claimed $42,000.00 in attorney's fees.

**b.    The claims of the plaintiff were for monetary relief and do not share the expectation of attorneys fees for non-monetary relief.**

The arguments of the plaintiff in support of the high attorney's fees request might have some greater relevance if the issues in this case also involved non-monetary issues.  The courts recognize that the size of a financial recovery is not the determining factor for attorney's fees in certain cases, many of which are those cited by the plaintiff.

However, those cases where the courts note that the size of the recovery does not automatically warrant a reduction in attorney's fees are those case where the

15

principle issues involved significant non-monetary issues or a combination of monetary and non-monetary issues.  That is not the situation with the present case.

For example, the court in United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Association, Local 307 v. G & M Roofing and Sheet Metal Company, Inc., 732 F.2d 495 at 504 (1984) (Local 307) noted that non-monetary claims were also entitled to attorney's fees.  Such claims might involve important statutory or constitutional issues and thus attorney's fees should be awarded for those claims as well.  Local 307 at 503.

In civil rights cases, given the societal interests, it is recognized that attorney's fees are not necessarily to be in proportion to the financial recovery.  City of Riverside v. Rivera, 477 U.S. 561 (1986).

These cases involving issues of civil rights often involve "numerous and complex proceedings and maneuverings", a circumstance absent in the present case.  Copeland v.  Marshall, 641 F.2d 880 at 884 (5th Cir. 1980).  In that discrimination case the court noted in allowing significant attorney's fees that the case was "basically an equity action which was intended to and did achieve benefits that cannot be measured solely in monetary terms", observing the major changes brought about.  Id. at 888.  The court there also noted that "no compensation should be paid for time spent litigating claims upon which the party seeking the fee did not ultimately prevail."  Id. at 891.

c.     The claims in the present case are not particularly unique or controversial.

16

No doubt the claims of the plaintiff are important and he is entitled to have them resolved.  However, nothing in the present case is of a unique nature warranting a federal action over such a small amount and warranting such a disproportionately unbalanced award of attorney's fees.

This was not a particularly difficult case.  It is essentially a collection case for wages claimed to be due but not paid.  There were no unusual legal issues.  There were no major factual issues, other than the plaintiff claiming he worked certain hours and the Town denying he worked those hours.

The amended complaints filed by the plaintiff were essentially boiler plate complaints.  In fact, they are essentially the same format used by plaintiff's counsel in other cases he has filed in the federal court and presumably in state court.  See for example Ciambriello v. M.E.K. Restaurant, et al, 2000-CV-12598-EFH; Mancia v. M.E.K. Restaurant, et al, 2000-VC-11838-EFH; Portillo v. Castillo, 2005-CV-10600RCL; Liu v. HealthSouth, Inc., 1998-CV-11166-MLW.  (The last two examples are cases involving collection of unpaid wages and denial of overtime and are believed to use the same form complaint; counsel was unable to access the complaints via the Court's electronic filing system.)

The Town acknowledged early on that it owed the plaintiff for the vacation pay in question.  The Town sought evidence to support the plaintiff's other claims; such evidence was never forthcoming.  There were no material established facts to support the other claims.

17

Given that the case settled, after the partial summary judgment in favor of the vacation pay which was not objected to, for only $1,000.00, strongly in and of itself suggests that there was insufficient proof of the other claims.

As noted in the complaint, as commented on in the various settlement letters sent by the Town, the plaintiff claimed he worked every Friday afternoon after the normal quitting time of 12 noon and yet never got paid for any of these *27* Fridays.  It strains credulity to think that someone would work for so many days and never get paid or compensatory time off.  The simple fact of the matter is that other than the plaintiff's self-serving claim that he so worked, there was no evidence to support this claim.

The other claims were similarly unsupported.  The plaintiff claims that he was entitled to be paid for time he went to the Registry of Motor Vehicles to renew his driver's license.  There is no basis to support this.  He claims that there were other days he worked but not paid.  No records supported his claim.

He claimed that he was entitled to be paid for waiting to be called in if it snowed.  Again, no records supported this.

Based on the lack of any meaningful evidence to support his other claims, the Town settled the matter urged by the Court, for a token payment of $1,000.00, which plaintiff accepted.

Had the plaintiff's claims been properly investigated the matter before filing suit, such as through public records requests or requests for his personnel records under G.L. c. 149, section 52C, it would have been evident that there were not sufficient facts to support the other claims.  It is recognized that the plaintiff's counsel entered the case

after the plaintiff had filed pro-se the complaint in federal court.  However, the Town should not have to pay under the appearance of necessary and reasonable legal fees for the time counsel essentially learned that there was no merit to the other claims.

Stated differently, had counsel investigated the claims before filing the suit and found, as is apparent, that there was no basis for the claims other than the vacation pay, he clearly would not have been entitled to be paid attorneys fees for such investigation and evaluation.

Why should he now, because the suit was filed, be any more entitled to attorneys fees for such work when in the end there was no valid basis for those other claims?

      **d.    The Town's position in the case was reasonable and appropriate.**

Given that the Town acknowledged in its opposition to the motion for partial summary judgment that it owed the vacation pay (as it had in prior correspondence and settlement offers (see Exhibits A and B) and even agreed in the opposition to trebling it (thus bringing it to $1,872.00), the plaintiff essentially had no favorable result from its motion.  The Town's position was consistent with its prior acknowledgement of the vacation pay being owed.  The court correctly denied the motion as relates to the call back time issue as there were genuine facts in dispute.

The Court properly encouraged the parties to seek a settlement on the remainder of the case.  The parties in good faith negotiated such a settlement, for the sum of $1,000.00.  It boggles the mind and adds another "poster child" example of abuses in the legal system for the plaintiff to now seek an additional $29,000.00 (on top of the

previously outlandish amount of $12,603.36) for recovering another $1,000.00 for the client.

As the Court should recall from the various pre-trial conferences/hearings, a trial on this matter would have involved bringing in practically the entire Department of Public Works of the Town, in order to refute the allegations of the plaintiff.  The cost of paying the employees for their time spent not working in their jobs but being in federal court would likely have exceeded that $1,000.00.   Thus, the $1,000.00 was a reasonable settlement to avoid a greater cost of going to trial.

Contrary to the assertions of the plaintiff, the Town did not "litigate tenaciously" and then complain about the attorney's fees.  The Town filed no motions, made no formal discovery requests, engaged in no depositions.  All the Town did was ask for some meaningful proof of the plaintiff's claims, which was not produced.

Consistently, the Town sought from the plaintiff evidence to substantiate his claims about all the work he claimed he did but did not get paid for.  Such evidence was not produced or was grossly insufficient, resulting in the Town maintaining its position.

The Town offered to pay the vacation pay.  Exhibit A.

The Town offered to pay the plaintiff a total of $5,000.00 on the disputed claims and vacation claim, including attorney's fees and costs.  Exhibit B.

The plaintiff did not accept these offers to settle the case.

Interestingly, with the vacation pay award and the $1,000.00 under the agreement between the parties, the plaintiff is receiving almost what the Town had

offered back in 2006.  (See Exhibit B).  That the plaintiff decided to hang in there and drag this out should not result in a reward to plaintiff's counsel.

> **e.    Attorneys fees are to be fair and reasonable, not to reward the attorney or make him rich.**

With a payment of attorneys of $42,000.00 for a claim in which the plaintiff recovered at best $2,872.00 misdirects the focus of such litigation.

Such an attorney's fee would be what the court in <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714 (1974) warned against when it cautioned that attorney's fees recovery should not result in making "the prevailing counsel rich".  Id. at 719.  Of note, in that case the issues were a class action under Title VII.  That case, cited by the plaintiff, is now 33 years old.  While there are more modern cases as noted by the Town, its warnings against making counsel "rich" in cases where the attorney's fees are so disproportionate to the recover are still worth remembering.

Similar cautions were expressed by the Supreme Court justices in <u>Riverside</u>, also cited by the plaintiff.  There, the Court observed that Congress did not intend by fee statutes to "produce windfalls for attorneys"", <u>Riverside</u>, 477 U.S. at 580, citing Senate reports.

Interestingly, Justice Powell in his concurring opinion found the attorney's fee award to be unreasonable.  However, he noted that there were "special circumstances" in the case.  Id. 581, 586.  No such circumstance exists here.

Chief Justice Berger, in his dissenting opinion, referred to the fee recovery statute involved in the case to be a "sec. 1988 relief act for lawyers".  Id.  588.

Rewarding the plaintiff with an attorney's fee anywhere close to the $12,000.00 or $42,000.00 he seeks is without legal basis and flies in the face of the goal of resolving disputes without going to trial.  Here the Town agreed to settle the case for an additional $1,000.00 rather than cause the Court to expend its limited resources (of time and money) to hear this relatively small case.

For the Town to now have to face potentially $42,000.00 in legal fees would send a message to all defendants that they should not seek to settle such cases.

The Town believes it had an excellent case on the remainder of the claims.  The size of the small settlement speaks loudly as to how strong the remainder of the plaintiff's claims were.

It is not the Town's fault that the plaintiff's counsel came into the case after it had been filed pro se.  Counsel still should have, and had ample time to do so, researched the basis of the claims to be sure that there was merit to them, as opposed to relying merely on the unsubstantiated claims of the plaintiff.

The plaintiff has often asserted that the fact such a relatively small claim is in federal court is because the plaintiff filed it pro se.  However, after counsel entered the case, nothing prevented the parties from agreeing to remove the case to the local state district court where it belonged.  For whatever reason, perhaps hoping that the federal systems comfort with large cases and large attorney's fees would work to his advantage, the plaintiff kept the case in the federal court.

  **f.  Granting such an award would set a bad precedent.**

Rewarding the plaintiff with the attorneys fees sought would only encourage attorneys to take such cases *without properly investigating the facts before filing suit*, on the expectation that if they investigate and evaluate after they filed suit and end up not having sufficient evidence to support their claims, a settlement for nominal amounts will still enable them to recoup all of the time they spent. Had they spent the time before filing suit, as is expected under the legal system, and had a valid claim for which they then filed suit, they would be entitled to reasonable attorneys fees at the end of the case if they were successful on the claims.

Here the plaintiff attempts to bootstrap what is evidently a weak claim to start with to one where his attorney seeks to be paid 15 times the small recovery as attorney's fees. It will only lead to similar cases and will only send a message that even if the claim is weak, a plaintiff may recover wildly disproportionate attorney's fees just by pursuing a claim for which there is no basis.

Similarly, defendants will have no incentive to settle if in doing so they may still be subject to attorney's fees for very weak claims. A defendant who believes that the evidence does not support claims like those before the Court would be better off fighting it all through trial and if successful in defeating the claims, not have to worry about being hit with a claim for attorneys fees, than settling a claim for essentially nuisance value and still being potentially liable for massive attorneys fees based on all the time the plaintiff's attorney spent on the case.

Thus, the Town had acknowledged it owed the vacation time, agreed to trebling it and opposed judgment on the call back time.  The court essentially found in favor of the Town's position.

The plaintiff did not obtain any recovery which was objected to by the Town.  The vacation pay issue was a non-issue as the Town in several instances acknowledged that it was owed to the plaintiff and offered it to the plaintiff, which offer was not accepted by the plaintiff.  Plaintiff should not be able to ignore offers to settle claims that are not disputed and then include them in a motion for partial summary judgment and seek grossly disproportionate attorney's fees on what was essentially not a disputed claim.

As noted in Exhibits A and B, the Town had acknowledged the plaintiff's entitlement to the vacation pay.  In fact, in Exhibit B the Town offered to treble it, which is what the court ultimately did.

In the Town's opposition to the partial summary judgment motion, the Town again conceded the point on the vacation pay and offered to treble it.  There was no dispute on this point.  Plaintiff did not truly prevail as the issue was never disputed.

In hindsight it may have been better for the Town to have paid the vacation pay while the litigation remained unresolved.  However, there was a federal law suit pending with multiple claims and the Town made a fair and reasonable proposal to settle the entire case which the plaintiff was continuing to pursue.

It should be obvious that given the fact that the vacation pay issue was not disputed from at least December 13, 2004, there would be no need for any attorney's fees or costs to be incurred relative to that issue.

Since that is the only issue the plaintiff arguably recovered on in his motion for partial summary judgment, the Town could, consistent with case precedent, but does not, argue that no costs or attorneys fees charged from that date should be included in any award of attorneys fees and costs.  Simply stated, there was no discovery or further discussions on the vacation pay issue; any discovery or discussion was on the other claims, which the plaintiff was **not** successful on.  Thus, under the principles of the cases outlined above, since the plaintiff was not successful on those claims he is not entitled to costs or attorneys fees on same.

The Town recognizes however that plaintiff's counsel is entitled to a fee based on his work which resulted in the Town agreeing to pay the vacation pay.  That fee however could not be the $12,603.36 or the $41,601.86 plaintiff seeks for total attorneys fees and costs.

All the factors noted in the cases above support the court slashing this disproportionate request for attorney's fees and awarding a fair sum in proportion, as the court directed, to the judgment obtained.  The Town recognizes that the plaintiff would arguably also be entitled to some additional attorneys following the summary judgment in terms of the settlement negotiated.

However, it is shocking to the conscious to even suggest that that figure could be $42,000.00.

Examining the Fontaine and Farrar factors and relation to present case via the chart below shows that the proper application of the analysis for attorney's fees warrants a major reduction in the pending request:

| Fontaine Factors | Application to this case |
|---|---|
| how long the trial lasted; | No trial; matter was heard on motion for partial summary judgment for a claim that was always acknowledged by the Town; other claims in case were settled for nominal damages to avoid the expense and inconvenience of a trial |
| the difficulty of the legal and factual issues involved; | Given that the Town readily acknowledged that the vacation pay was owed, there were no difficult legal or factual issues; the remaining claims were settled for nominal damages, suggesting that there were no difficult legal or factual issues involved |
| the degree of competence demonstrated by the attorney | The Town does not dispute the competence of plaintiff's counsel; the Town does however, in view of the fact that it offered as far back as March of 2005 the same result the plaintiff obtained in the partial summary judgment respectfully suggest that no special degree of competence was required; given the claims involved the settlement of the rest of the case for $1,000.00, especially when compared to the cost of bringing in the Town's DPW workforce and inconveniencing the public by having to essential shut the department down during the trial, no special degree of competence was needed by plaintiff's counsel |
| the nature of the case and issues presented | This case is a garden variety FLSA case, with a state wage claim included; given that the Town readily acknowledged the state claim for vacation pay and offered to treble it, the case presented no unique issues; the complaint appears to be a form complaint for this type of case; no unique issues were presented or |

|  | established in this case |
|---|---|
| the time and labor required | The award of attorneys fees is to be for the part of the case which resulted in a judgment favorable to the plaintiff; since the Town had already agreed to the vacation pay and trebling it, no significant time or labor was needed as relates to that claim; as relates to the other claims that were settled essentially for nuisance value, no significant time was needed |
| the amount of damages involved; | $624.00 weekly pay, which the Town agreed could be trebled to $1,872.00, which is what the Court did; the $1,000.00 to settle the remaining claims amounts to a nominal settlement |
| the result obtained; | Claims for call back time denied under motion for summary judgment as facts in dispute; claim for vacation pay, which was acknowledged by Town, was only result; other claims were not established and other than the vacation pay non-issue, other claims were settled for nominal damages without any admission of liability; given that it was done by agreement, there was no recovery "granted" or "found" by the Court- it was a negotiated settlement |
| the experience, reputation and ability of the attorney; | Plaintiff's attorney is an experienced, skilled and professional attorney; given that the vacation pay was acknowledged early on as due and owing, and the rest of the case was settled for a nominal sum ($1,000.00) the case hardly seems the type warranting the skill level of the plaintiff's counsel |
| the usual price charged for similar services by other attorneys in the same area; | No information presented as to fees charged for FLSA cases of a similar nature, especially where the Town acknowledged the vacation pay was due |
| the amount of awards in similar cases | No information presented as to amount of award in similar cases |

Farrar factors and relation to the present case:

| Farrar Factors | Application to this case |
|---|---|

| | |
|---|---|
| Degree of success | No degree of success as Town had already acknowledged vacation pay due; the nominal sum paid for settlement of the rest of the case compared to the costs saved by the Town in settling can hardly be viewed as the plaintiff having a significant degree of success |
| Amount of damages awarded | $1,872.00 based on weekly pay of $624.00 being trebled;  Town had offered this; $1,000.00 to settle the rest of the case and avoid a lengthy trial |
| Whether a technical victory | Given that the Town offered the same amount as recovered under the summary judgment and the parties settled the rest for a nominal amount, there was no real victory |
| Is it wasteful to go through traditional analysis where the victory is technical or de minimus | Going through traditional analysis not necessary where the only success was one offered by the Town plus a nominal amount of only $1,000.00 and there were no real legal or factual issues as to plaintiff's entitlement; attorneys fees should be in proportion (as directed by the court) to judgment and total recovery |
| Any special circumstances to render award of attorneys fees unjust | Fee sought is 15 times the amount awarded; Town had on several prior occasions indicated its willingness to pay the vacation pay; nominal additional sum to settle, resulting in a grand total recovered without objection (as relates to the vacation pay) and by way of settlement (as relates to the rest of the claims); amount of recovery pales in comparison to legal fees sought;  should be apparent that legal fees in such a large amount must relate more to issues that were in dispute, such as the call back time claim, which the plaintiff was not successful on in his motion |
| Any significant legal issue | No significant legal issue tried or established, as Town had readily conceded vacation pay was due and the parties reached a voluntary settlement for a nominal sum to close out the remainder |

| | of the case.  This was a garden variety wage claim case with no unique legal issues and no legal precedent |
|---|---|

### III.     The hourly rate of $450.00 is unreasonable

The Town recognizes and does not dispute that the plaintiff's counsel is a highly competent attorney of many years experience.  However, with all due respect and with a natural hesitancy to "quibble" over what a competent attorney should be paid, the Town must object to the $450.00 rate.

In the plaintiff's filings, several rates are suggested for an hourly rate for his services.  With all due respect to the plaintiff's counsel, it is somewhat confusing as to exactly what hourly rate he is seeking for himself.  His affidavit explains his "de facto" contingent fee agreement[7] with the plaintiff.  He makes reference to other affidavits filed from attorneys in support of what appears to be a claim for $450.00 per hour.

Firstly, the rates set forth in his de facto contingent fee agreement more accurately set forth what the market rates are for his services- it is what he agreed to be paid.  "The existence of a contingency fee agreement may be considered by a district court as an element to be considered in determining the market value of an attorney's service, but the court is not bound in any sense by that agreement."  United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Association, Local 307 v. G & M Roofing and Sheet Metal Company, Inc., 732 F.2d 495 at 504 (1984).

Secondly, the $450.00 an hour suggested by the plaintiff's counsel based on what the other attorneys have suggested as a fair rate may in fact be a reasonable rate for an

attorney employed in a law firm where the hourly rate of the attorney is expected to cover overhead, rent, staff support, office expenses, etc.   A rate is supposed to be a fair rate, given the expenses involved and a reasonable rate of compensation for the person.  We are not looking here at downtown Boston firm rates, with the attendant expenses.

Here, plaintiff's counsel's office is a residential office and thus does not have the same overhead that may warrant attorneys charging $450.00 an hour to cover in their hourly rates.[8]  No disrespect is intended by referring to counsel having a residential office.  The undersigned has one as well.  But there must be a recognition in setting an hourly rate for the attorney's fees that normally a rate of $450.00 is expected to cover the typical office overhead and rent of an attorney.  The attorney does not receive that rate directly and without having it pay towards expenses of the firm.  Here, counsel, to his credit and the envy of others, does not have such expenses as other attorneys whose hourly rate of $450.00 is justified in part by their office overhead.

## IV.    The Town made a Rule 68 Offer of Judgment

The Town filed a Rule 68 Offer of Judgment in the amount of $1872.00, which is the amount the plaintiff has recovered under the partial summary judgment.  Thus, any costs or attorneys should be capped as of the filing of the Rule 68 Offer.  Here the plaintiff under the summary judgment only received $1,872.00, the amount offered in the Offer.  The $1,000 was by way of an agreement.

---

[7]   Curiously, the contingent fee agreement has not been submitted and thus its terms are not properly before the Court.
[8]   If it is disputed that counsel has a residential office, the Town can present records from the Somerville Assessors, available on line (http://data.visionappraisal.com/SomervilleMA/findpid.asp?iTable=pid&pid=212) to verify this.

The fact that the Rule 68 Offer did not mention attorney's fees does not affect its validity, as such Offers need not specify costs or attorney's fees.  Utility Automation 2000, Inc. v. Choctawhatchee Electric Cooperative, Inc., 298 F.3d 1238, 1241 (2002).  Also, costs under Rule 68 for FLSA cases do not include attorney's fees.  Id. at 1242, n. 5.

## CONCLUSION

For the reasons argued above and that may be presented at oral argument, the plaintiff's motion for attorneys fees should be denied or in the alternative, granted in a much lesser amount, probably in the range of $5,000.00, which is still more than the amount of judgment.


## REQUEST FOR ORAL ARGUMENT

The Town further requests that the Court schedule a hearing to hear oral argument on the Motion and Opposition so that the parties may address these issues with the Court, have an opportunity to answer any questions or concerns raised by the Court and to generally be of assistance to the Court in addressing this matter.


July 2, 2007                        Respectfully submitted,
                                    Town of Hull,
                                    By its Town Counsel,
                                    S/ *James B. Lampke*
                                    JAMES B. LAMPKE, ESQ.
                                    BBO NO. 284280
                                    TOWN COUNSEL-TOWN OF HULL
                                    115 NORTH STREET
                                    HINGHAM, MA  02043
                                    781-749-9922

Certificate of Service

      I, James B. Lampke, Esq., certify that I have this day served a copy of the within document on the plaintiff electronically to his attorney of record, Mark D. Stern, Esq., 34 Liberty Avenue, Somerville, MA 02144.


Date: July 2, 2007                    s/*James B. Lampke*
                                      James B. Lampke