UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BOYD FULTON,<br>    Plaintiff<br><br>v.<br><br>TOWN OF HULL, MASSACHUSETTS,<br>    Defendant | Civil Action No.2004 CV 11234 MEL |

**PLAINTIFF'S RESPONSE TO**
**DEFENDANT'S OPPOSITION TO ATTORNEY'S FEES**

Plaintiff respectfully responds to Defendant's Opposition to Plaintiff's Consolidated Motion for Assessment of Costs Including Reasonable Attorney's Fees ("Defendant's Opposition"). In summary, Plaintiff states that each of the propositions asserted by the Defendant in its Opposition and discussed below are largely statements of the personal opinion of Defendant's Counsel that are **unsupported either by evidence or by case law**.

**A.   THE DEFENDANT'S CHARACTERIZATION OF**
**THE METHOD FOR EVALUATING AN ATTORNEY'S FEE AWARD**
**MISAPPLIES THE RELEVANT CASE LAW**

The Defendant alleges that of the legal principles establishing attorney's fee awards, "the most critical factor is the degree of success obtained." Defendant's Opposition @ 10, quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). While this is an accurate quote from *Hensley*, it is taken entirely out of context and suggests that the case stands for a proposition for which it fundamentally does not stand. The *Hensley*

1

Court stated that to determine a fee award a Court should first and chiefly consider two things:

1. Whether "plaintiff [is] ... a 'prevailing party' ..., [that is one who has succeeded] on **any** significant issue in litigation which achieves **some** of the benefit the parties sought in bringing suit," and

2. What is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." 461 U.S. at 433 (emphasis added).

Once a party has established an entitlement and lodestar amount of fees requested per each of these two basic elements, absent special circumstances, a court's discretion to adjust a fee award upwards or downwards is very restricted. *New York Gaslight Co. v. Carey*, 447 U.S. 54, 67-68 (1980); *Hensley,* 461 U.S. @ 430, n.4 (in computing a fee, counsel should be paid for all time reasonably expended on a matter; any reduction of fees would have to be carefully justified by applying an objective formula); *Blum v. Stenson*, 465 U.S. 886, 897-899 (1984) (the court's discretion to adjust the basic measure for other factors is very restricted). **Only when and if such "special circumstances" exist should a Court consider other factors**. Of these **other** factors, "the most critical factor is the degree of success." *Hensley*. 461 U.S. @ 436.

An example of such special circumstances was present in a case cited by the Defendant where the "prevailing" plaintiff sought $17,000,000 in damages and was awarded only $1. *Farrar v. Hobby*, 506 US. 103 (1992). In stark contrast, the Plaintiff here sought approximately $5,000 in damages and was awarded $2,872 excluding costs

and attorney's fees.[1]  Fulton's recovery of over fifty percent of the amount sought and $1,000 greater than the Rule 68 settlement offer from the Defendant (see discussion below) is far from the "special circumstances" that necessitate anything more than a token if any adjustment from a lodestar fee.

**B.     THE DEFENDANT'S RULE 68 OFFER DOES NOT PRECLUDE PLAINTIFF FROM SEEKING ATTORNEY'S FEES FOR SERVICES RENDERED BEFORE OR AFTER THE OFFER DATE**

The Defendant alleges that because the "Plaintiff . . . did not receive a judgment in excess of its Rule 68 Offer," the Plaintiff should not be awarded attorney's fees for services rendered beyond the time the Rule 68 offer was made. Defendant's Opposition @ 5.  The Defendant's sole Rule 68 Offer was for $1,862 exclusive of costs, and if accepted, the Offer would have precluded the Plaintiff from pursuing any of his other claims for which he received an additional $1,000 in the final judgment.[2]  A Rule 68 Offer impacts a party **only if** accepted or "if the judgment finally obtained by the offeree is not more favorable than the offer..." By refusing the Offer and pursuing his other claims, the Plaintiff recovered a judgment of $2,872 exclusive of costs, $1,000 more than the Offer.  Hence, the evidence before this Court is clearly contrary to the Defendant's

---

[1] As such, it is hard to imagine how Defendant compares this case to the attorney seeking "over $50 million for a misplaced pair of pants," and receiving nothing. Defendant's Opposition @ 14.

[2] The Defendant's offer of a greater amount in a letter was not made in the form of a Rule 68 Offer, and had it been in that form it was plainly intended to preclude any recovery of attorney's fees and therefore also would have been for an amount plainly less favorable than the judgment the Plaintiff will ultimately receive.

3

contention: that is, the evidence plainly establishes that **the Plaintiff did obtain a judgment more favorable than the Defendant's Rule 68 Offer,** and the Offer has no impact on the Plaintiff's request for attorney's fees for services rendered before or after the date of the Offer.

Even, however, if the Offer had been plainly restricted to the single claim for vacation pay, it would not have had a preclusive effect in regard to Plaintiff's present claim for fees. As noted in the very case the Defendant cites for the proposition that "[t]he fact that the Rule 68 Offer did not mention attorney's fees does not affect its validity, as such Offers need not specify costs or attorney's fees," *Utility Automation 2000, Inc. V. Choctawhatchee Electric Cooperative, Inc.*, 298 F.3d 1238 (11th Cir. 2002) (Defendant's Opposition @ 31), an offer that does not specifically include a bar to a subsequent request for fees does not preclude a party who accepts the offer from seeking attorney's fees in addition to the amount offered and accepted for damages under a fee-shifting statute or contract. Hence, had the Defendant offered $1,860 to the Plaintiff on his vacation pay claim alone, and had Plaintiff accepted said offer, Plaintiff would have been entitled to seek virtually the same award of fees for the services rendered on that claim as he presently seeks, that is, costs including attorney's fees on that claim for all the services rendered up to the date the Offer was made (see discussion below), fees for obtaining an award of fees, and, on the other claims, costs including attorney's fees for the efforts expended thereafter.

**C.    PLAINTIFF'S PRESENT ATTORNEY'S FEE REQUEST IS NOT DISPROPORTIONATELY GREATER THAN HIS INITIAL FEE REQUEST FOR THE VACATION PAY CLAIM, BUT INSTEAD ALSO INCLUDES THE TIME RENDERED IN PURSUIT OF OTHER CLAIMS, BOTH BEFORE AND AFTER HE PREVAILED ON THE VACATION PAY CLAIM, ON WHICH HE HAS NOW PREVAILED**

The Defendant argues that the Plaintiff disproportionately increased his fee request for services rendered subsequent to his successfully obtaining relief on the vacation pay claim. Defendant's Opposition @ 13-14.  **This is simply not true**.  When the Plaintiff first requested fees for services rendered on the vacation pay claim, he **excluded** from his request all services rendered prior to that date on his other claims.  He did this because he had not prevailed, wholly or partially, as of that date on any of those other claims.  In his present application, he **includes** services rendered in relationship to those claims **both before and after** he obtained partial summary judgment on the vacation pay claim.  Hence, much if not most of the increase in his fee request reflects services **other than** those rendered after the Plaintiff obtained relief on his vacation pay claim.

Plaintiff's Counsel's initial fee request accounted for hours spent on claims other than the vacation pay claim by either excluding charges for services rendered explicitly on claims other than the vacation pay claim, reducing his fee rate a proportional amount for services rendered on more than one identified claim, or significantly reducing his fee for services rendered that he was unable to conclusively distinguish on which claim the work was performed. See Affidavit of Mark D. Stern In Support of Plaintiff's Motion for an Award of Attorney's Fees ¶ 11.

5

**D.    COSTS AND ATTORNEY'S FEES ARE APPROPRIATE MEASURES OF PLAINTIFF'S EXTENT OF SUCCESS IN WAGE CASES**

The Defendant alleges that the Plaintiff "presents a distorted picture of the true recovery" because he includes consideration of **costs, interest, and attorney's fees** in his analysis of his degree of success. Defendant's Opposition @ 9. **The Defendant's contention that such factors cannot be considered in determining the extent of success is not supported by a single case cited by Defendant, and rather is plainly contrary to the intent of the pertinent legislation and case law.**

The attorney's fees and other costs/interest recovered are critical aspects of the real-world success of the Plaintiff. Here, the Plaintiff hired an attorney to recover approximately $5,000 in unpaid wages, was required to expend legal fees far in excess of that amount to obtain an order that will someday in the future result in the actual payment of said wages, and recovered approximately $3,000 plus the right to recover costs including reasonable attorney's fees. If the Court were to only consider the amount of the underlying damages Plaintiff recovered, he and virtually every plaintiff proceeding under the wage and hour, and/or consumer protection laws, would never in fact be a prevailing party. They would always have expended more than they recovered.

Plainly this is not what the General Court and Congress respectively intended to occur. When these legislative bodies adopted "fee-shifting" provisions in their wage and hour, and consumer protection enactments, they must be presumed to have intended that the provisions be given some meaning. To give them meaning, the measure of success

6

must be adjudged by viewing the total picture, and not by taking a myopic view. To do otherwise is nonsensical because it ignores the full picture.[3]

As one example, suppose a consumer buys a faulty $39.95 toaster oven. The seller of the toaster oven had known that the toaster and others like it were faulty, but fraudulently sold it as a fit product. The consumer brings suit and obtains judgment of $39.95 trebled. He/she incurred $350 in filing and service fees, and expended far more than $120 in attorney's fees, perhaps as much as twenty times more ($2,400) than the damages rendered. The consumer's extent of success cannot be judged by the dollar amount of his/her recovery. The consumer's extent of success can only be measured by considering the fact that the consumer is entitled to recover his/her filing and services fees, and to recover the $2,400 attorney's fees.

In support of its contention that attorney's fees distort the Plaintiff's extent of success, Defendant attempts to distinguish wage and hour cases from civil rights cases, asserting in effect that the securing of the payment of wages is neither a "significant monetary issue" nor a "combination of [significant] monetary and non-monetary issues." Defendant's Opposition @ 15-16. The legislative branches of the Commonwealth and the United States, however, have not distinguished civil rights from wage and hour, and consumer protection rights, but rather treated them comparably and provided for a right to

---

[3] When judging whether a person is well-dressed, one does not only consider his/her shirt and tie, and ignore the rest, such that a person appearing at a party without any pants and shoes would be deemed "well-dressed."

recover attorney's fees for "the vindication of [such] congressionally identified policies and rights" under each. *Fegley*, 19 F.3d @ 1134 - 35, quoting *Roofers Local 307 v. G & M Roofing*, 732 F.2d 495, 503 (6th Cir. 1984). The present case illustrates this concern. To ignore the ability to recover attorney's fees in this case ignores the legislatively indicated purpose that an attorney's fee award in wage and hour cases assures that such claims will be pursued and vindicated. Id. Absent providing for such awards, virtually none of these cases would ever be pursued economically, and, the ones pursued would largely result in a loss to the prevailing party.

**E.     PLAINTIFF'S COUNSEL'S RATE OF $450 IS REASONABLE**

Defendant asserts that Plaintiff's Counsel's rate of $450 per hour is unreasonable. It asserts that "[Plaintiff's] counsel . . . does not have such expenses as other attorneys whose hourly rate of $450.00 is justified in party by their office overhead." Defendant's Opposition @ 30. **This contention is not based on any evidence.** It is supported only by the statement that Plaintiff's Counsel's office is located at a residential address.

As the accompanying Affidavit confirms, Plaintiff's Counsel does indeed work from the same address as his and his family's residence. However, his workplace is not what one would describe as a "home office." Plaintiff's Counsel's office occupies the entire third floor of the building and provides little or no economies except for the elimination of commuting time. **The corporate entity that is the office acting as Plaintiff's Counsel pays the same overhead - including but not limited to rent,**

8

**utilities, insurance, accounting, cleaning services, furniture, books, equipment, and supplies - that other lawyers pay regardless of the location of their offices**. Affidavit of Mark D. Stern In Support of Plaintiff's Response to Defendant's Opposition to Attorney's Fees.  Notwithstanding that fact, Plaintiff's Counsel's suggested rate of $450 is still reduced approximately $180 from rates associated with Boston law firms as is noted in the Affidavit of his Harvard Law School Classmate, Thomas Shapiro, previously provided to the Court.

**F.    AN AWARD OF ATTORNEY'S FEES WILL NEITHER CREATE
         A WINDFALL FOR PLAINTIFF'S COUNSEL, NOR CREATE BAD
         PRECEDENT FOR MAKING ATTORNEYS RICH FROM WAGE CASES**

Wage and hour claims (other than class action claims), to Plaintiff's Counsel's knowledge, rarely or never result in a windfall to plaintiff's counsel because awards thereunder are rarely for an amount a percentage of which exceeds a fair hourly rate.[4] More often than not it is more fair to describe one of these cases as an "albatross" rather than a "windfall."[5]

---

[4] Plaintiff's Counsel feels confident in saying that it is doubtful the Defendant can point to a single case where a prevailing party in a wage and hour case had a lodestar fee significantly augmented (such that a windfall resulted) for any reason, though there are myriads of cases where they receive less, as undoubtedly will occur in this case. Hence, Plaintiff's Counsel invites Defendant's Counsel to point to such a case.

[5] Where a Defendant responds appropriately to the claims made, some of these cases become neither one, nor the other.  But where a Defendant responds by refusing to acknowledge a valid claim, acknowledging it at the eleventh hour after dozens of hours of otherwise unnecessary services had to be rendered, and/or failing to make timely payment on a plainly valid claim, a plaintiff's counsel rarely recovers anything resembling a fair rate for his services, much less a windfall.

**G.    THE TOWN'S ACTIONS WERE IN FACT TENACIOUS AS ITS FAILURE TO PAY WAGES IT ACKNOWLEDGED WERE DUE CREATED THE CIRCUMSTANCES THAT NECESSITATED THE ATTORNEY FEES OF WHICH THE TOWN NOW COMPLAINS.**

Defendant here contends that it did not "litigate tenaciously," and says this is established by the fact that it did not engage in filing motions, making formal discovery requests, or taking depositions. Defendant's Opposition @ 20.  However, there is more than one way to exact a price from an opposing party.[6]  One can drag its feet as long as possible, as Defendant did here, by, for example, failing to pay even the wages it acknowledged it owed despite knowing the law states wages are due on day of separation of employment.[7]

Hence, Defendant's assertions regarding the absurdity of the amount of attorney's fees requested by the Plaintiff in this case are a case of the pot calling the kettle black. The only absurdity before this Court is the fact that the Town repeatedly attempted to compel the Plaintiff to forego his right to pursue any other claims in order to be paid on a

---

[6] A party cannot lay down and block the road, and then argue they did not fight back because they failed to hurl any bricks.

[7] Before Plaintiff's Counsel spent any meaningful time on this case, he sent the Town a letter indicating the same.  Even subsequent to Plaintiff's succeeding on his Motion for Partial Summary Judgment, the Defendant has still failed to pay said wages.  Further, the Defendant has and continues to litigate the issue of attorney's fees quite tenaciously.  While certainly within the prerogative of the Defendant, such a strategy has significantly increased the number of hours on the present and past fee applications.

claim the Town acknowledged was valid, and due and owing to him years before. By this tactic the Town forced Plaintiff to pay an attorney to pursue even Plaintiff's vacation wages by amending his complaint, engaging in discovery, and moving for partial summary judgment. Considering the fact that there was no defense ever asserted to this claim, the Defendant was about as tenacious as it could have been under the circumstances.

**H.   CONCLUSORY NOTE**

Though Plaintiff's Counsel has expended time responding to these unsupported assertions by the Defendant, Counsel is exercising his billing judgment and not augmenting his request for attorney's fees to reflect the additional services rendered.

By his attorney,

*Mark D. Stern/s*

Mark D. Stern
BBO #479500
**Mark D. Stern, P.C.**
34 Liberty Avenue
Somerville, MA 02144
Tel. (617) 776-4020
Fax  (617) 776-9250
email: markdsternpc@rcn.com

Dated: July 17, 2007