NOTICE: The slip opinions and orders posted on this Web site are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. This preliminary material will be removed from the Web site once the advance sheets of the Official Reports are published. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

Constance M. KILLEEN vs. WESTBAN HOTEL VENTURE, LP.

No. 05-P-1553.

October 19, 2006. - August 21, 2007.

Labor, Wages. Attorney at Law, Compensation. Practice, Civil, Attorney's fees, Damages.

CIVIL ACTION commenced in the Superior Court Department on September 15, 1997.

Following a jury-waived trial that bifurcated the issues of liability and damages, and a subsequent determination of liability, a motion for calculation of damages as well as assessment of attorney's fees and costs was heard by Nancy Staffier-Holtz, J.

Linda L. Morkan, of Connecticut (David B. Wilson & Alida Bogran-Acosta with her) for the defendant.

Michael K. Gillis for the plaintiff.

Present: Cypher, McHugh, & Katzmann, JJ.

MCHUGH, J.

Westban Hotel Venture, LP, doing business as Westin Copley Place, appeals from a judgment awarding the plaintiff, Constance M. Killeen, damages in the amount of $1.26, trebled to $3.78, for violation of G.L. c. 149, § 152A, as amended by St.1983, c. 343, a statute regulating the manner in which employers distribute tips they collect on behalf of their employees, and attorney's fees and costs in the amount of $153,717.77. [FN1] We vacate the judgment and remand for further proceedings.

1. Background. The plaintiff worked as a server at banquets and functions in the defendant's hotel, the Westin Copley Place, for more than fourteen years. During that period, she worked at an average of 400 events per year. At each of these events, the plaintiff was supervised by one or more banquet captains, who were responsible for supervising the servers and doing whatever else was necessary to ensure smoothly run functions. From time to time, the captains assisted in actual service of food and beverages, but food and beverage service was a minor component of their

over-all mission. At all times material to the litigation, the defendant customarily assigned captains to supervise more than one function simultaneously.

The defendant routinely added a fourteen percent service or gratuity charge to the food and beverage charges for each function. From 1983 through August, 1995, the defendant distributed an equal share of an event's service charge to each employee, including the captains, who had worked at the event. As a result, when working multiple functions simultaneously, banquet captains would receive a larger portion of the gratuities than the servers who actually served food and beverage. [FN2]

In September of 1997, this action was commenced to challenge the defendant's tip allocation procedures. [FN3] In the complaint, the plaintiff claimed that captains should not have received distributions from the service charges the defendant collected because G.L. c. 149, § 152A, [FN4] limited recipients to those who engaged in "the serving of food or beverage" to event patrons and the captains did not provide "service" within the meaning of the statute. In addition to alleging that the defendant's tip distribution policy violated the statute, the plaintiff claimed that the policy (1) was a breach of contract; (2) was a breach of the covenant of good faith and fair dealing implied in the employment relationship between the plaintiff and the defendant; (3) amounted to fraud; (4) constituted conversion; and (5) was an intentional interference with an advantageous relationship.

Ultimately, the case proceeded to a jury-waived trial that bifurcated liability and damages. In the liability phase, the trial judge found that captains did provide "service" to banquet patrons and were entitled to share in the service charges the defendant collected. The judge also found, however, that the defendant's custom and practice of allowing banquet captains who simultaneously worked at multiple functions to collect a proportionate share of the service charges generated by each function violated the statute's "proportionality" provision (see note 4, supra ). Based on that conclusion, the judge also concluded that the defendant's practice violated the covenant of good faith and fair dealing implicit in an at-will employment relationship and amounted to conversion and unjust enrichment. The judge dismissed the plaintiff's claims of fraud, interference with an advantageous relationship, and breach of an express contract. Finally, and although the defendant had abandoned the challenged practice in 1995, some two years before the action began, the judge, sua sponte, issued a declaratory judgment pursuant to G.L. c. 231A stating that the defendant's practice of giving "banquet captains working simultaneously scheduled or overlapping functions a single share from the 14% gratuity pool of each one of the multiple functions supervised by that captain or captains while only compensating servers from the tip pool worked by that server unlawfully violates the proportionality provisions of G.L. c. 149, § 152A."

At the subsequent damage phase of the trial, the plaintiff, who had sought damages ranging from approximately $78,000 to $127,000, was only able to prove that she had been harmed by the defendant's practice on one occasion and that the damages for that one occasion amounted to $1.26. Because she believed that G.L. c. 149, § 152A, required an award of treble damages, the judge ordered entry of judgment in the amount of $3.78. The judge also awarded the plaintiff $153,717.77 in costs and attorney's fees pursuant to G.L. c. 149, § 150.

On this appeal, the defendant challenges the judge's decision to treble the damages and to award costs and attorney's fees.

2. Trebling damages pursuant to G.L. c. 149, § 150. General Laws c. 149, § 150, as appearing in St.1993, c. 110, § 182, provides, in pertinent part: "Any employee claiming to be aggrieved by a violation of [G.L. c. 149, § 152A,] may ... institute and prosecute in his own name and on his own behalf ... a civil action for injunctive relief and any damages incurred, including treble damages for any lost wages and other benefits." In her findings and conclusions following the damage phase of the trial, the judge stated, "It would not appear from a reading of the statute that such a trebling is discretionary." Accordingly, she trebled the $1.26 basic award to $3.78. Subsequently, however, the Supreme Judicial Court held in Wiedmann v. The Bradford Group, Inc., 444 Mass. 698, 708-710 (2005), [FN5] that treble damages under G.L. c. 149, § 150, are discretionary, not mandatory, stating that its conclusion was similar to that in Goodrow v. Lane Bryant, Inc., 432 Mass. 165, 178-179 (2000), interpreting a similar provision in G.L. c. 151, § 1B. The court pointed out that multiple damages are essentially punitive damages and are appropriate where "conduct is 'outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others.' " Wiedmann v. The Bradford Group, Inc., 444 Mass. at 710, quoting from Goodrow v. Lane Bryant, Inc., 432 Mass. at 178. [FN6] Because Wiedmann holds that trebling is not mandatory under G.L. c. 149, § 150, and because the judge made no finding on the question whether the defendant's conduct was "outrageous" or showed a "reckless indifference to the rights of others," we must "vacate the award of treble damages and remand the issue for the judge's reconsideration whether treble damages are warranted." Wiedmann v. The Bradford Group, Inc., 444 Mass. at 710.

3. Award of attorney's fees. General Laws c. 149, § 150, is an exception to the "American Rule," which requires each party to bear its own litigation costs. See generally Police Commr. of Boston v. Gows, 429 Mass. 14, 17 (1999). In pertinent part, § 150 provides: "An employee ... who prevails in [an action for a violation of G.L. c. 149, § 152A,] shall be entitled to an award of the costs of the litigation and reasonable attorneys fees" (emphases added). G.L. c. 149, § 150, as appearing in St.1993, c. 110, § 182.

In opposing the fee award in this case, the defendant claims that the plaintiff's failure to recover anything more than "nominal" damages means that she should not be viewed as the "prevailing party" for purposes of a fee award and, even if she should be, the award in this case is not "reasonable." We consider those claims in succession.

a. Prevailing party. In Farrar v. Hobby, 506 U.S. 103 (1992), the United States Supreme Court explored the question whether a civil rights litigant who is awarded nominal damages is a "prevailing party" and entitled to attorney's fees under 42 U.S.C. § 1988 (2000), the Federal fee-shifting statute. "[A] plaintiff 'prevails,' " the Court held, "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Id. at 111-112. See Mendoza v. Licensing Bd. of Fall River, 444 Mass. 188, 210 (2005). Because "[a] judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay," the Court

concluded that one who recovers nominal damages is a "prevailing party." Farrar v. Hobby, 506 U.S. at 113.

The Court went on to say, however, that

"[a]lthough the 'technical' nature of a nominal damages award or any other judgment does not affect the prevailing party inquiry, it does bear on the propriety of fees awarded under § 1988. Once civil rights litigation materially alters the legal relationship between the parties, 'the degree of the plaintiff's overall success goes to the reasonableness' of [the] fee award.... Indeed, 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.' ... In some circumstances, even a plaintiff who formally 'prevails' under § 1988 should receive no attorney's fees at all. A plaintiff who seeks compensatory damages but receives no more than nominal damages is often such a prevailing party."

Id. at 114-115. In the aftermath of Farrar, numerous Federal decisions have declined to award attorney's fees to litigants who recovered only nominal damages in civil rights litigation. [FN7]

The defendant urges that the analytical approach taken by these cases provides an ample basis for refusing to award the plaintiff any fees at all in this case. The defendant's argument, however, ignores a critical difference between the governing statutes. The Federal statute, 42 U.S.C. § 1988, is permissive, providing that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee." See Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 293 (1st Cir.2001). As noted earlier, the fee provision in G.L. c. 149, § 150, is mandatory and requires award of a reasonable fee to one who "prevails" in an action to which the statute applies. The award of compensatory damages to the plaintiff, though modest, altered the legal relationship between her and the defendant, made her the "prevailing party" in the litigation, and, therefore, required an award of legal fees.

b. Reasonable fees. Finally, then, we turn to the fee the judge awarded here. "The basic measure of reasonable attorney's fees is a 'fair market rate for the time reasonably spent preparing and litigating a case.' " Stowe v. Bologna, 417 Mass. 199, 203 (1994), quoting from Fontaine v. Ebtec Corp., 415 Mass. 309, 326 (1993). See Stratos v. Department of Pub. Welfare, 387 Mass. 312, 322 (1982). This approach to fee calculations is known as the "lodestar" approach, Fontaine v. Ebtec Corp., 415 Mass. at 325; Stratos v. Department of Pub. Welfare, 387 Mass. at 321-322, and the results it produces "should govern unless there are special reasons to depart from them." Stratos v. Department of Pub. Welfare, 387 Mass. at 322. See Fontaine v. Ebtec Corp., 415 Mass. at 325; Stowe v. Bologna, 417 Mass. at 203. In this area, as in others, much is left to the discretion of the trial judge, for she typically "is in the best position to determine how much time was reasonably spent on a case, and the fair value of the attorney's services." Fontaine v. Ebtec Corp., 415 Mass. at 324. See Stowe v. Bologna, 417 Mass. at 203.

The proper method for determining the lodestar was explained succinctly in Stowe v. Bologna, 417 Mass. at 203-204:

"The first component of the basic measure amount is the amount of time reasonably expended on

the case. The judge should begin his inquiry with the amount of time documented by the plaintiff's attorney. Stratos, supra at 322-323. Then the judge decides whether this amount of time was reasonably expended. Id., and cases cited. The judge should not only consider the plaintiff's financial interests at stake but also the plaintiff's other interests sought to be protected by the statute in question and the public interest in having persons with valid claims under the statute represented by competent legal counsel. See [i]d. at 323. The second component of the basic measure amount is the amount of a reasonable hourly rate. This amount should be the average rate in the community for similar work by attorneys with the same years' experience. Stratos, supra at 323-324, and cases cited."

In deciding whether the documented time was reasonably expended the judge may, in addition to considering the interests at stake, also consider many of the factors articulated in Linthicum v. Archambault, 379 Mass. 381, 388-389 (1979), i.e., the nature of the case and the issues presented, the time and labor required, the amount of damages involved, and the result obtained. Those factors have been used for years as guides to assessment of reasonable fees in Massachusetts cases, see Cummings v. National Shawmut Bank, 284 Mass. 563, 569 (1933), and continue to be useful guides to determining time reasonably spent when applying the lodestar methodology. See, e.g., Stowe v. Bologna, 417 Mass. at 203. Compare Stratos v. Department of Pub. Welfare, 387 Mass. at 322-323 (applying the Federal Johnson factors, Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-719 [5th Cir.1974], [FN8] to the lodestar approach). See also Siegel v. Berkshire Life Ins. Co., 64 Mass.App.Ct. 698, 706 n. 8 (2005) (noting that "[u]nder the lodestar method, [these] other, formerly separate considerations, see, e.g., Linthicum v. Archambault, 379 Mass. at 388-389, come into play indirectly").

Assigning an appropriate weight to the various factors is sometimes difficult, and that difficulty is perhaps greatest when assigning a weight to the results achieved in the litigation. As noted earlier, the judge "should not only consider the plaintiff's financial interests at stake but also the plaintiff's other interests sought to be protected by the statute in question and the public interest in having persons with valid claims under the statute represented by competent legal counsel." Stowe v. Bologna, 417 Mass. at 203. See Stratos v. Department of Pub. Welfare, 387 Mass. at 323 ("The financial benefit to the plaintiff, and the general benefit to public interests, are relevant considerations ..."). Consequently, when a plaintiff's victory, although "de minimis as to the extent of relief ... represent[s] a significant legal conclusion serving an important public purpose," Diaz-Rivera v. Rivera-Rodriguez, 377 F.3d 119, 125 (1st Cir.2004), the fee award need not be proportionate to the damages recovered. See id. (discussing 42 U.S.C. § 1988); Stratos v. Department of Pub. Welfare, 387 Mass. at 323. See also Riverside v. Rivera, 477 U.S. 561, 573-574 (1986); Gay Officers Action League v. Puerto Rico, 247 F.3d at 296.

At the same time, realistic assessment of the benefits the litigation actually produced is always necessary when attempting to determine what litigation costs are appropriate, for neither costs nor benefits are free-floating variables. In determining time reasonably spent on a matter, the court must be mindful of "the difficulty of the case" and "the results obtained," Stratos v. Department of Pub. Welfare, 387 Mass. at 323; see Hensley v. Eckerhart, 461 U.S. 424, 436 (1983) ("the degree of success obtained" a factor in lodestar analysis); Farrar v. Hobby, 506 U.S. at 114, and "compensable hours may be reduced if the time spent was wholly disproportionate to

the interests at stake." Stratos v. Department of Pub. Welfare, 387 Mass. at 323. As stated by the Federal courts in cases awarding attorney's fees, no fee should "be awarded for services [employed pursuing an] unsuccessful claim," Hensley v. Eckerhart, 461 U.S. at 435, unless "the court finds that "the unsuccessful claims are 'sufficiently interconnected' with [the] claims on which [the] plaintiff prevails." Peckham v. Continental Cas. Ins. Co., 895 F.2d 830, 842 (1st Cir.1990). See Hensley v. Eckerhart, supra; Krewson v. Quincy, 74 F.3d 15, 19 (1st Cir.1996). And, as the United States Supreme Court stated in Hensley v. Eckerhart, 461 U.S. at 437, "[w]hen an adjustment is requested on the basis of either the exceptional or limited nature of the relief obtained by the plaintiff, the ... court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained."

In this case, the judge did not use the lodestar method to calculate the attorney's fees she awarded, and she did not specifically focus on whether the hours spent on the case were spent reasonably. See T & D Video, Inc. v. Revere, 66 Mass.App.Ct. 461, 476-477 (2006), cert. denied, 127 S.Ct. 2905 (2007). She noted that the fees the plaintiff sought "were disproportionate to the damage award" and, therefore, questioned "whether there ought to be a reduction in the requested fee amount." But, citing Linthicum, she answered that question in the negative because, she found, the case was complex, the plaintiff's victory, although nominal, had a significant impact on the service industry as a whole, the attorney had requested no compensation for time not reflected on his billing records, the plaintiff's attorney's hourly rate was at the low end of an appropriate range, and the plaintiff's attorneys were skilled and experienced in this type of litigation.

We think that the judge's election to use the Linthicum factors directly, and not as guides to determining whether the hours spent on the case were reasonable, caused her to focus with insufficient precision on the amount of time it was reasonable for the plaintiff's counsel to have spent on this case in light of the results the plaintiff obtained. As to complexity, the judge noted that the case had required two trials, each lasting four days. In addition, the judge said that "much effort was required in the discovery phase, together with time required to try to analyze the data and attempt to utilize it to support the plaintiff's claims." But the plaintiff's primary claim at the first trial was that G.L. c. 149, § 152A, prohibited the captains from participating in any distribution of service charges, a claim the court rejected. And at the second trial, the plaintiff's effort to prove damages somewhere between $78,000 and $127,000 netted a base award of $1.26. To be sure, the plaintiff's case on damages was hindered by the unavailability of certain records the hotel had routinely destroyed pursuant to its record retention policy. However, the judge noted that the plaintiff could have relied on extrapolations from the defendant's existing records to prove damages with a fair degree of precision. [FN9] Instead of doing so, the judge observed, the plaintiff "opted to merely guess." Her "estimate" of damages "was little more than her subjective belief that she was the victim of an unlawful policy resulting in lost gratuities exceeding $70,000," and her "estimate" of the number of occasions when she worked at events that overlapped with others was "flawed." So viewed, a significant part of the case's complexity sprang from claims on which the plaintiff failed.

As to the impact of the litigation on the service industry, the judge said that the "case was not only factually complex but [also] significant to those in the service industry. That the plaintiff

prevailed was important not only for her own claim but for others similarly situated (even though this particular defendant, to be fair, did in fact change its system prior to the litigation). However, what the defendant did by choice is now required by judicial fiat. This was no small feat on the part of an attorney representing a waitress against the interests of a major hotel chain." That said, nothing in the record suggests that any other employers ever used the defendant's challenged system for paying captains who supervised overlapping events or, if they did, how widespread the practice was. Also, the defendant itself, as the judge noted, had abandoned that system two years before the litigation began. And, to the extent that the decision affected other people in the plaintiff's position in the service industry, those other people, like the plaintiff herself, were adversely affected by the decision in the liability phase of the case, where the plaintiff did not prevail on what had initially been her principal claim that captains should not share in the tip pool at all.

There is no doubt that the plaintiff's attorney was experienced and well credentialed. But the judge's finding that the attorney had in effect "discounted" his fee application by "waiving" his right to claim a fee for hours spent on the case "which in his own estimation were not adequately recorded, i.e., not contemporaneously recorded" gives insufficient weight to the principle that "[t]he fee applicant bears the burden of documenting in detail the hours expended and of establishing the market rate," T & D Video, Inc. v. Revere, 66 Mass.App.Ct. at 477, and that a discount may be appropriate when an attorney includes in a fee request hours for which there is no contemporaneous documentation. See Handy v. Penal Institutions Commr. of Boston, 412 Mass. 759, 768-769 (1992). [FN10] If undocumented hours are not a proper ingredient of a fee award, omitting them from a fee request does not produce a "discounted" request. See generally T & D Video, Inc. v. Revere, supra at 476-477.

In sum, we think that the judge's analysis of the plaintiff's request for attorney's fees considered with insufficient precision the relationship between the fee requested and the results the litigation achieved, that is, whether the amount of time spent on the case was reasonable in light of those results. To be sure, neither the amount of the fee, standing alone, nor the relationship between the fee and damages awarded, by itself, is a basis for vacating the fee award. See, e.g., Twin Fires Investment, LLC. v. Morgan Stanley Dean Witter & Co., 445 Mass. 411, 427-432 (2005). See also Gay Officers Action League v. Puerto Rico, 247 F.3d at 296. However, when a fee request appears on its face dramatically disproportionate to the results the litigation produced, as it does here, the judge must focus with precision on the relationship between the time invested and the results achieved in order to insure that the "time spent was [not] wholly disproportionate to the interests at stake." Stratos v. Department of Pub. Welfare, 387 Mass. at 323. In this case we think that a second look at the fee application in light of the principles articulated above is required.

4. Attorney's fees incurred on appeal. The plaintiff has requested an award of fees in connection with this appeal. Since she has not prevailed here, appellate attorney's fees are not warranted.

Paragraph 3 of the judgment, which trebles the amount of damages to $3.78, and paragraph 4 of the judgment, which assesses attorney's fees and costs in the amount of $153,717.77, are vacated, and the case is remanded for further proceedings consistent with this opinion.

So ordered.

FN1. We note that the trial judge's "Findings of Fact, Memorandum and Order on Plaintiff's Motion for Calculation of Damages As Well As Assessment of Attorneys' Fees and Costs" states that the award of fees and costs totals $153,717.55. However, the judgment entered awards $153,717.77, twenty-two cents more. The difference is likely a typographical error; we refer to the judgment amount in this opinion.

FN2. The trial judge explained that result in the following fashion:

"[A] captain working ten small functions at the same time with three servers will share [one fourth] of the tip from each function. Assuming that the gross invoice for each function is $600 [and] assuming further that the service charge is 14%, the captain will receive $21 from each function or $210 for the ten functions, while each server would only get $21. General Laws [c.] 149, § 152A, requires proportionality. Accordingly, applying this principle, thirty-one employees should share a tip pool of ... $840 divided by 31 employees equals $27.10 for each server and the captain."

FN3. The action was commenced by Astor D. Chance, another of the defendant's employees, who later withdrew. Plaintiff Constance M. Killeen joined the action in October, 1997, and proceeded alone after Chance withdrew.

FN4. General Laws c. 149, § 152A, as amended by St.1983, c. 343, provides, in pertinent part: "No employer ... shall solicit, demand, request or accept from any employee engaged in the serving of food or beverage any payment of any nature from tips or gratuities received by such employee during the course of his employment ... or retain for himself any tips or gratuities given directly to the employer for the benefit of the employee, as a condition of employment; ... If an employer or other person submits a bill or invoice indicating a service charge, the total proceeds of such charge shall be remitted to the employees in proportion to the service provided by them.... [T]he court may require such employer or other person to make restitution for any tips or gratuities accepted or retained by him in violation of this section."

FN5. The plaintiff in Wiedmann sued for a violation of G.L. c. 149, § 148, the weekly payment of wages law. General Laws c. 149, § 150, provides the right of action for violations of § 148 as well as of § 152A.

FN6. In Goodrow v. Lane Bryant, Inc., supra at 179, the Supreme Judicial Court held that, because the law was uncertain at the time and there was nothing to show that the employer "intentionally or wilfully violated Massachusetts law," the trial court had properly declined to award treble damages.

FN7. See, e.g., Willis v. Chicago, 999 F.2d 284, 289-290 (7th Cir.1993), cert. denied, 510 U.S. 1071 (1994); Cramblit v. Fikse, 33 F.3d 633 (6th Cir.1994); Urban v. Jefferson County Sch. Dist., 89 F.3d 720, 728-729 (10th Cir.1996); Johnson v. Aiken, 278 F.3d 333, 338 (4th Cir.2002); Boston's Children First v. Boston, 395 F.3d 10, 15-18 (1st Cir.2005). See also Tunison v. Continental Airlines Corp., 162 F.3d 1187, 1189-1191 (D.C.Cir.1998).

FN8. In Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-719 (5th Cir.1974), the United States Court of Appeals for the Fifth Circuit set out twelve factors it believed should be considered when assessing the reasonableness of a fee request. See Draper v. Town Clerk of Greenfield, 384 Mass. 444, 456-457 (1981), cert. denied sub nom. Draper v. Prescott,
456 U.S. 947 (1982). The twelve gained currency in other Federal circuits and ultimately obtained approval by the United States Supreme Court. See Hensley v. Eckerhart, 461 U.S. 424, 429-430 & n. 3 (1983). In Stratos v. Department of Pub. Welfare, supra, the Supreme Judicial Court said that several of these factors were appropriate to consider when using the lodestar method and assessing the reasonableness of time spent on a case.

FN9. Perhaps for that reason, the judge stated that the plaintiff's claim was "meritorious" and that her inability "to meet her burden of proof was a problem of evidence and not necessarily a reflection of the merits of the case." This sounds as if the judge were suggesting that a different approach to the evidence would have led to a better result. Yet the judge did not relate that suggestion to her analysis of the degree of success for which counsel was to be compensated.

FN10. As for the rate the attorney charged, the judge found that "attorneys of similar experience and expertise in the greater Boston area would likely charge rates in the range of $250-$350 per hour for this work." The plaintiff's attorney charged $265 per hour, an amount within that range. Later, though, the judge said that

"[t]he plaintiff notes that the United States Attorney's Office has compiled
an extensive matrix, called the 'Laffey Matrix.' Under this matrix which the Federal Courts have used to ascertain reasonable attorney's fees in 'fee shifting' cases, the appropriate hourly fee for attorneys with the experience of these plaintiff's attorneys is more than $115 per hour more than [the] rate currently sought by plaintiff's counsel."

The judge apparently used the "Laffey Matrix" in forming her judgment that the attorney had "discounted" his fee application. However, the "Laffey Matrix" yields an hourly rate $30 per hour higher than what the judge found was the Boston market rate, or, more precisely, the range of market rates, for similar services by lawyers with similar experience and qualifications. The relationship between Boston market rate and the "Laffey Matrix" is unclear.